Receipt # 067277

ORIGINAL

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

BID PROTEST

| | | |
|---|---|---|
| INFORMATION SCIENCES CORP. Plaintiff, | ) | 07-744 C |
| v. | ) | |
| THE UNITED STATES OF AMERICA, Defendant. | ) | JUDGE: ______ |

FILED OCT 24 2007 U.S. COURT OF FEDERAL CLAIMS

COMPLAINT

Plaintiff, INFORMATION SCIENCES CORPORATION ("ISC"), brings this bid protest action against the UNITED STATES OF AMERICA, acting through the General Services Administration ("GSA"). The protest arises out of GSA's third award decision on Solicitation Number TQN-04-RA-0001 issued in 2004 and based on an offer submitted in February 2005 by Symplicity Corporation which was evaluated by a majority of the technical evaluation team as "unacceptable" and presenting a "significant risk of unsuccessful contract performance." In support of its cause of action, ISC states as follows:

PARTIES

1. ISC is a corporation duly organized under the laws of Maryland with its principal place of business at 2437 Linden Lane, Silver Spring, Maryland.

2. The United States, through the General Services Administration ("GSA"), issued on May 18, 2004, Solicitation Number TQN-04-RA-0001 (the "Solicitation"), for a fixed price

incentive contract for the comprehensive development and management of the Federal Business Opportunities ("FBO") system which operates www.fedbizopps.gov.

## JURISDICTION

3. This Court has jurisdiction over this action pursuant to the Tucker Act, 28 U.S.C. § 1491(b)(1) (2005).

## FACTS

4. Fedbizopps is the statutorily mandated single point of entry for the publication of all federal procurement opportunities over $25,000 in value. It is relied upon by small and large businesses seeking contracting opportunities with the federal government both as prime contractors and subcontractors. The FBO and the Fedbizopps system is the essential heart of the government's competitive procurement process and must operate with a very high degree of reliability in order for competitive procurements to occur on a daily basis. If the system were to lose this reliability, government contractors will be severely harmed in their ability to easily and effectively compete for government contracts and subcontracts.

5. As stated in the 2004 Solicitation and last amended in 2005, offerors were required to propose and deliver a system that supported the business process of serving as the single government-wide point of entry for federal agencies and contractors for federal procurement opportunities in a manner that is at least equal to or better than the current FBO system functionality. Offerors were required to meet a number of technical standards, such as interoperability with other government systems, and seamless transition with current the FBO system, and uninterrupted service as the single source for federal procurement activities during the transition period.

6. Other detailed Solicitation requirements included the production of a robust system that could, at a minimum, support two million registered and 1,000 concurrent users; could store and archive one million total documents per year, and process sixty million page hits per month, that could store and process 50,000 new documents each month, and process each real-time data input transaction within two seconds. The system was required to provide live technical and end user support between the hours of 7:00 a.m. to 7:00 p.m for the entire 8 year contract period. The system was also required to be reliable, by preventing data loss (e.g., a backup and recovery system, mirrored systems), and by not exceeding 8 hours per twelve-month period of system down time (approximately 99.9% system availability), exclusive of scheduled down time. The system also was required to be expandable and allow for new technology insertion, and provide systems architecture that features low life-cycle support costs.

7. In addition to these minimum requirements, the Solicitation provided for two priced options for the new functional capabilities that an offeror was required to propose in its Technical and Price proposals. The options are: (1) incorporate the full functionality of the Federal Integrated Acquisition Environment System known as the "Federal Technical Data Solution (FedTeDS)," and (2) develop and deploy a comprehensive secured Electronic Proposal Receipt (EPR) Module.

8. ISC has extensive experience with the Fedbizopps system, having worked in partnership with Science Applications International Corporation ("SAIC") to develop and deliver this key government system. Fedbizopps, as developed by ISC, is an award-winning web-based system that allows prospective contractors to search for federal contracting opportunities by contracting agency, geographic area, federal procurement classification codes and set aside types, and by keyword.

9. The Fedbizopps system that ISC developed and has operated and maintained for nine years has been recognized as being highly successful by users. It currently has over 999,000 registered users, and handles over 54 million hits per month, an increase of 19 million hits from two years ago when the last award decision was made in 2005. A customer survey done by GSA's Inspector General gives the FBO system high marks for its performance in terms of both functionality and reliability, with 88% of participants ranking the website positively and 86% identifying it as the only source they use to compete for Federal business opportunities.

10. The Fedbizopps system, as developed and maintained by ISC and its partner, SAIC, has been nominated for and received numerous awards. Fedbizopps was a finalist for the 2004 Government Technology Leadership Awards. It was selected by the Ash Institute for Democratic Governance and Innovation at Harvard University's Kennedy School of Government as one of the Top 10 Federal programs. In October 2003, Fedbizopps was selected as a GCN Agency Award winner for innovative IT accomplishment. Fedbizopps received the Intergovernmental Solutions Award presented by the Federation of Government Information Processing Councils.

11. The synopsis for the Solicitation at issue was publicized on March 1, 2004, and the Solicitation itself was originally issued on May 18, 2004. The original date for submission of offers was June 17, 2004. The Solicitation was amended seven times. Amendment 0001, dated May 14, 2000, withdrew the Solicitation and announced it would be re-posted at a later date. Amendment 0002 reissued an amended Solicitation on June 9, 2004, with offers due by June 17, 2004. On June 9, 2004, GSA posted answers to 199 questions, although not all questions were answered completely. Amendment 0003, dated June 10, 2004, extended the deadline for submission of proposals to June 24, 2004.

12. On November 15, 2004, ISC filed a protest at the Government Accountability Office ("GAO") alleging defects in the Solicitation because Amendment 0004, issued October 29, 2004, eliminated the mandatory date for delivery of a compliant system and did not account for the cost savings associated with an earlier delivery of a compliant system. In taking corrective action as a result of that protest, GSA issued Amendment 0005 on November 24, 2004 and addressed one of the issues raised in ISC's protest by requiring the contractor to deliver a compliant system 120 days after contract award for testing and evaluation, and be prepared for full operation 150 days after contract award, and also extended the deadline for submission of proposals.

13. In taking further corrective action on the ISC protest, GSA issued Amendment 0006, on December 14, 2004, which modified the price evaluation and further extended the deadline for revised proposals to January 3, 2005.

14. In February 7, 2005, GSA requested Final Price Proposals. On February 9, 2005, ISC submitted a Final Price Proposal. Four months later, by correspondence dated June 17, 2005, ISC received notice of GSA's intent to award the contract to Symplicity Corporation ("Symplicity" or "awardee"). ISC received its mandatory debriefing on June 20, 2005. On June 24, 2005, ISC filed a post-award protest at GAO, raising a number of improper actions with the evaluation process. A protest was also filed by Developmental InfoStructure ("Devis"). By correspondence dated July 11, 2005, and Amendment 0007 of the same date, GSA took corrective action on one issue raised in the Devis protest involving security issues.

15. Amendment 0007 did not address the other two issues raised in the Devis protest nor any of the nine issues raised in the ISC GAO protest. Over the objection of both Devis and ISC, GAO nevertheless dismissed both protests on July 14, 2005 with instruction to GSA to preserve

the record and a clarification that the issues raised by the protestors would still be timely with a new award decision.

16. On December 7, 2005, GSA notified ISC that it had confirmed its prior decision to select Symplicity for award of the FBO contract. According to GSA, Symplicity's evaluated price was $17.5 million. The government estimate for this 8 year, fixed-price contract is $52 million.

17. On December 22, 2005, ISC filed a protest in this Court. Case No. 05-1342C. After complete briefings and oral argument, the Court issued its opinion to the parties on August 31, 2006 sustaining the protests due to GSA's violation of procurement regulations as a result of its failure to establish properly the competitive range in September 2004 and the Source Selection Authority's failure to document an independent decision. The Court issued a permanent injunction and set aside the award to Symplicity. The Court also ordered that a new Source Selection Authority be appointed in the event GSA decided to proceed with the procurement.

18. On October 3, 2006, GSA filed a Motion for Reconsideration of the Court's decision. That motion was denied on February 23, 2007.

19. On April 25, 2007, GSA issued a letter to ISC that notified ISC that it had been included in the competitive range and requested "an extension of your current proposal." That letter also stated: "[d]o not provide any other information, as discussions are closed." ISC was given two choices, either to extend the validity period of its proposal or withdraw its proposal.

20. The Solicitation, at Section L. 10 advised offerors that award could be made without discussions.

21. According to GSA, the Contracting Officer, established a new competitive range based on the initial proposals received over three years ago in June 2004. However, notwithstanding the establishment of a competitive range based on initial proposals, no discussions were held despite the Federal Acquisition Regulation ("FAR") requirement that a competitive range is to be established only if discussions are to be held. FAR, 48 C.F.R. § 15.306(c)(1).

22. On Friday, September 28, 2007, the last working day of Fiscal Year 2007, GSA announced the re-award of the contract to Symplicity for $17.5 million. That award was apparently based not on Symplicity's initial offer but on Symplicity's revised offer submitted two and half years ago in February 2005.

23. On Monday, October 1, 2007 ISC submitted a written request for a debriefing. That debriefing was held on October 15, 2007 and consisted of the GSA contracting officer reading 14 PowerPoint slides to ISC. At the conclusion of the reading, ISC was allowed to submit written questions. ISC submitted 7 written questions.

24. Contracting agencies are required to award contracts pursuant to the factors and sub-factors contained in the Solicitation. In this case, GSA used the best value tradeoff process described in Federal Acquisition Regulation ("FAR") 15.101-1, 48 C.F.R. § 15.101-1 (2005), which allows tradeoffs among price and non-price factors and allows the Government to accept a proposal that is neither the lowest cost proposal nor the highest technically rated proposal. The Solicitation identified four technical factors which were to be weighed against cost to choose the winning proposal: Technical Approach, Management Approach, Past Performance, and Key Personnel Staffing and Experience. In addition, "Oral Presentation and Operational Capability

Determination (OCD) Evaluation Factors" were to be incorporated into the offeror's technical evaluation and used to arrive at a final technical adjectival score.

25. Both an adjectival rating and a confidence rating were to be assigned for each factor, with each being of equal importance. The adjectival ratings were, Outstanding, Excellent, Acceptable, Marginal, and Unacceptable. The confidence ratings were, High Confidence, Significant Confidence, Confidence, Little Confidence, and No Confidence.

26. The Solicitation also included provisions allowing GSA to eliminate a proposal on the grounds of an unrealistically low price proposal, and requiring GSA to evaluate price in order to ensure that it is realistic in light of the proposed scope and effort.

27. GSA gave a lower "Confidence" rating to ISC's technical proposal rating notwithstanding the fact that ISC has developed and operated Fedbizopps over the past nine years and was able to demonstrate a live system of all its proposed enhancements.

28. By rating ISC's technical proposal as "Acceptable," even though it clearly exceeded the minimum requirements of the Solicitation, it is clear that GSA did not properly evaluate ISC's technical approach. According to the terms of the Solicitation, the rating "Acceptable" was to be applied to proposals that meet only the minimum performance or capability requirements. ISC's proposal contained a number of enhancements that exceeded the Solicitation requirements, many of which were developed based on current user reviews and requests. By offering these enhancements, ISC should have at least been rated "Excellent," which was supposed to be the rating applied to those proposals that exceeded the minimum performance or capability requirements in a way beneficial to the Government.

29. GSA cited six weaknesses in ISC's technical approach that cannot reasonably considered as a weaknesses. In each instance, the cited weakness is inconsistent with the evaluation factors and subfactors, is inconsistent with what is stated in ISC's proposal or, is completely unrelated to technical requirements.

30. GSA also failed to properly evaluate ISC's price proposal. GSA calculated ISC's offered price relying on options in comparison to Symplicity's minimally technically acceptable price. GSA unreasonably included in ISC's price offered enhancements, permitted but not required by the Solicitation. As a result, ISC's evaluated price was evaluated against the awardee's evaluated price for the basic system without the enhancements offered by ISC.

31. Had GSA properly evaluated ISC's technical proposal, each of its alleged weaknesses would have been eliminated. Had GSA properly calculated ISC's price proposal, it would have had a proper basis for a reasonable cost/technical tradeoff and best evaluation decision that would have reasonably resulted in an award to ISC.

32. And, based on information and belief, GSA improperly evaluated both Symplicity's technical and price proposals and improperly included Symplicity in the competitive range.

32. Accordingly, ISC protests any award under Solicitation Number TQN-04-RA-0001 as contrary to regulation, unreasonable, unsupported by the facts, and an abuse of GSA's discretion. Allowing an award to be made in violation of regulatory requirements and using evaluation factors and processes other than those stated in the Solicitation leads to a failure of the competitive procurement process, and an award that cannot be said to have been made in a fully competitive environment. Furthermore, if the procurement is allowed to proceed ISC will suffer injuries that are fairly traceable to the improper evaluation of its proposal.

WHEREFORE, Plaintiff, ISC prays that this Court enter judgment in this matter as follows:

a. Enjoining Defendant from performance under Solicitation Number TQN-04-RA-0001, or any other solicitation for the same project;

b. Enjoining Defendant from proceeding with the subject procurement until it properly evaluates ISC's and Symplicity's proposal consistent with the terms of the Solicitation and the applicable procurement laws;

c. Awarding a contract to the offeror submitting the proposal that represents the best value to the government consistent with the terms of the Solicitation; and

d. Awarding ISC such other and further relief as this Court may deem necessary and proper.

Respectfully submitted,

William A. Shook
Kirkpatrick & Lockhart Preston Gates Ellis LLP
1601 K Street NW
Washington, DC 20006
Tel: (202) 661-6256
Fax: (202) 778-9100
Email: bill.shook@klgates.com

Date: October 24, 2007