**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| INFORMATION SCIENCES CORP., | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| THE UNITED STATES, | ) | |
| Defendant, | ) | No. 07-744C<br>(Judge Braden) |
| and | ) | |
| DEVELOMPENT INFOSTRUCTURE, INC., | ) | BID PROTEST |
| Intervenor, | ) | |
| and | ) | |
| SYMPLICITY CORP., | ) | |
| Intervenor. | ) | |

**DEFENDANT'S SUR-REPLY IN OPPOSITION TO PROTESTORS' MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT AND MOTION FOR PRELIMINARY AND PERMANENT INJUNCTION**

Plaintiff ISC and Intervenor Devis argue in their reply brief that the Court should "immediately" halt the subject procurement on the basis of a "material change in the terms of the FBO procurement that was made for the sole benefit of Symplicity." ISC/Devis Reply at 3. As explained below, this claim is as desperate as it is factually incorrect. There has been no material change to Symplicity's contract or otherwise any basis to set aside the FBO procurement.

## I. The Protestors Continue To Misunderstand The FBO Procurement

We accurately noted during the November 29 oral argument that protestors' counsel "doesn't understand the contract" between Symplicity and the Government. It now appears that

the protestors have progressed from simply misunderstanding the contract to misunderstanding the RFP and their own proposals (all of which, like Symplicity, proposed monthly billing to GSA). The protestors know that the current Symplicity contract is based upon its final proposal, the proposal accepted by the Government. AR Tab 126 A-C. Under the terms of that proposal, Symplicity openly stated – and GSA accepted – that it would bill GSA monthly for many components of its pricing. AR 2134-39 (hosting services, support maintenance, software licenses, etc. would be "billed monthly"). Other components would be billed according to completion of certain performance "milestones." AR 2146.[1]

The monthly billing, of course, does not increase or change in any way the fixed pricing offered by Symplicity and accepted by GSA for the new FBO system. The contract remains for a fixed term at fixed prices. Thus, under the express terms of the contract, Symplicity is entitled to bill monthly for work, irrespective of whether GSA has transitioned to the new FBO system to be provided by Symplicity. Id. While system transition from ISC to Symplicity is currently scheduled for March/April 2008, Symplicity is already incurring costs for the development of the new FBO system. Accordingly, and notwithstanding the protestors' allegations of a sinister conspiracy, GSA has done nothing improper by permitting Symplicity to bill for its work.

Protestors nonetheless assert that Symplicity cannot lawfully receive monthly payments under its contract because, they claim, the RFP mandates that any payments under the awarded contract can only be made upon completion of "performance milestones." ISC/Devis Reply at 4,

---

[1] The Court should note that the administrative record with Symplicity's final proposal as accepted by the Government was produced in this case in January 2006 as part of the first protest. At that time, neither ISC nor Devis objected to the terms of Symplicity's proposal aside from Devis' challenge to Symplicity's identification of key personnel. Info. Scis. v. United States, 73 Fed. Cl. 70, 111-12 (2006). The Court should reject the attempt by ISC and Devis to use this second protest as a forum to raise arguments that could have been raised during the first protest, particularly where the only issues now before the Court are the CO's reconsideration of the competitive range and the SSA's new best value decision.

9, 11. The protestors have cited the court to only one provision in the RFP that allegedly states such a thing: "In particular, the RFP expressly provided only for payments based on "a milestone schedule for performance based payments." Id. at 11, citing AR Tab 9 at 144 (RFP § L.8.3.4). The RFP does not support the protestors' argument.

The RFP section cited by protestors asked only that offerors propose milestone payments tied to named deliverables as part of their proposals; however, performance of the contract encompasses far more than the milestones and their corresponding deliverables. The RFP did not bar an offeror from proposing that the balance of its prices be billed monthly. AR 144. Whether the offeror linked all or part of the payments to milestones was up to the offeror. But in either case, the RFP advised that "the successful offeror's schedule, after acceptance by the Government, will be the basis for pricing in Section B [CLIN pricing]." Id.

To make clear the possibility of monthly payments for services, the RFP also contained Section G.4, which by its terms contemplated monthly billing:

> **G.4 Invoice/Voucher**
>
> The Invoices/Voucher document shall be delivered to the Government by the 5th working day of each month. One original and one (1) copy of the invoice/voucher document shall be submitted to the finance center at the address shown in block 25, Standard Form 33. Two copies shall be mailed to the Contracting Officer's Technical Representative at the following address . . . .

AR 103 (emphasis added).

Consistent with the RFP, Symplicity and Devis proposed certain payments to be made upon completion of milestones.[2] AR 2146 (Symplicity); AR 1505-06 (Devis). Symplicity, ISC,

[2] Ironically (given ISC's current argument), a review of ISC's proposed pricing and payment structure reveals that none of ISC's pricing was contingent upon the completion of any milestones at all. AR 1792-1816. Thus, ISC's current dispute with the administration of Symplicity's contract is truly misplaced.

and Devis uniformly proposed that the majority of their services would be billed monthly. AR 2134-39 (Symplicity); AR 1798-1800 (ISC); AR 1505-06 (Devis). ISC and Devis – in contrast to their counsel here – understood that monthly billing for the majority of the work was permissible under the RFP. Thus, ISC and Devis' latest argument du jour, complaining that Symplicity's price and billing structure is somehow an improper material change not contemplated by the parties, makes no sense when their own proposals, had they been accepted by the Government, would have entitled them to the same monthly payments.[3] There is no unfairness here; GSA is treating Symplicity as it would treat any successful FBO awardee.

Accordingly, there is no evidence to support ISC and Devis' charge that GSA has "fundamentally changed this procurement from one for a 'performance based contract' into one in which the government will pay 1/12th of any amount quoted by the awardee from the outset of the contract, regardless of whether any of Symplicity's FBO software ever works or whether any FBO services are actually provided." ISC/Devis Reply at 12.

## II. A CICA Claim Presumes The Validity Of The Underlying Contract

In their reply, the protestors make clear for the first time that, if they are permitted to again amend the complaint, they intend to challenge the modification of Symplicity's contract as a violation of the Competition in Contracting Act ("CICA"). ISC/Devis Reply at 2, 15. Yet the protestors have carefully ignored the fatal implication of this challenge to their bid protest: the nature of a CICA suit, as a challenge to a contract modification as a "cardinal change," necessarily presumes the validity of the underlying contract. See, e.g., CW Gov't Travel, Inc. v.

---

[3] We disagree with ISC and Devis' statement in their brief that "neither defendant nor Symplicity even dare [sic] to deny that the contract terms are materially different from the terms of the RFP." ISC/Devis Reply at 3. Even assuming the accuracy that the alleged change (which we dispute), a mere change to the payment schedule is not a material change to the contract.

United States, 61 Fed. Cl. 559, 574 (2004) ("Modifying the contract so that it materially departs from the scope of the original procurement violates CICA by preventing potential bidders from participating or competing for what should be a new procurement."); Cardinal Maint. Servs., Inc. v. United States, 63 Fed. Cl. 98 (2004) (same). In CICA cases, the "original procurement" is the accepted baseline against which the court assesses whether a subsequent modification is a "material depart[ure] from the scope of the original procurement." Id. In fact, "when a modification simply adds work to an existing contract in contravention of CICA, the Court can 'carve out' that work to be re-competed." Id. at 574-75 (citing CESC Plaza Ltd. P'ship v. United States, 52 Fed. Cl. 91, 93-94 (2002)).

Here, ISC and Devis cannot have it both ways. They cannot challenge the validity of the underlying procurement while simultaneously contending that the alleged modification of the validly awarded Symplicity contract is a material change that violates CICA. Even if they could maintain the inconsistent claims, they have not alleged that the disputed modification was of a sufficiently "drastic" or "profound" nature so as to require resolicitation. As this Court has stated, "CICA . . . does not prevent modification of a contract by requiring a new bid procedure for every change." CW Gov't Travel, 61 Fed. Cl. at 574 (citing AT & T v. Wiltel, 1 F.3d 1201, 1205 (Fed. Cir. 1993)). The protestors have not cited the Court to any case where a change of the nature alleged here was held to violate CICA. This is not surprising. The CICA inquiry "focuses on whether the Government modifications changed the contract so profoundly as to circumvent the statutory requirement of competition," that is, "whether the modification substantially changes 'the type of work, performance period, and costs as between the original contract and modified contract.'" Id.; CESC Plaza Ltd. P'ship, 52 Fed. Cl. at 93. The protestors' complaint as to Symplicity's billing does not begin to approach this standard.

Here, there is no case suggesting that a mere change in Symplicity's payment schedule (assuming the truth of the facts as alleged by protestors) was a violation of the CICA statute. It is difficult to understand how such a minor administrative change could ever be of the "drastic" or "profound" nature to warrant a recompetition. Obviously, such a change would not affect the scope, performance period, or price of the FBO contract in any way. Thus, under this Court's precedent, the amendment proposed by ISC and Devis is futile and irrelevant to the underlying merits of the bid protest, and should be denied. Emerald Coast Finest Produce Co. v. United States, 76 Fed. Cl. 445, 450 (2007).

Finally, the protestors cite the court to the same two cases in support of their claim that a change in payment schedule is relevant to the underlying procurement. ISC/Devis Reply at 12-23, citing Hunt Building Co. Ltd. v. United States, 61 Fed. Cl. 243 (government not permitted to allow awardee to materially revise its proposal post selection) and IDEA Int'l Inc. v. United States, 74 Fed. Cl. 129 (2006) (modification of contract to permit contractor to invoice government half of contract price within first month of performance). The facts of Hunt Building have nothing to do with those in this case: Symplicity never revised its proposal following award, and the contract awarded is the same contract Symplicity is performing. And the court in IDEA International – without any analysis or tie to CICA – questioned but ultimately permitted a change in the awardee's contract.

The protestors add a new cite to HDM Corporation v. United States, 69 Fed. Cl. 243 (2005), purportedly for the proposition that the court's "jurisdiction extends to protests of post-award contract modifications." ISC/Devis Reply at 5. We agree, but this is misleading at best. In contrast ISC and Devis' current bid protest, HDM was a straight CICA suit challenging the modification of an ongoing Medicare contract. HDM, 69 Fed. Cl. at 252 ("In this case, plaintiff

is not challenging an award, but rather, claims that there has been a violation of statutory requirements for competition in government procurements."). As we previously stated, a CICA suit is not a bid protest. No one disputes the jurisdiction of this court to decide a CICA claim where, as in HDM and all the CICA cases cited by both sides, the claim is brought outside the context of a bid protest. In contrast, ISC and Devis seek to fuse the court's bid protest jurisdiction with its CICA jurisdiction. The Court should not permit the proposed amendment.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Mark A. Melnick
MARK A. MELNICK
Assistant Director

s/ Gregg M. Schwind
GREGG M. SCHWIND
AMANDA L. TANTUM
Trial Attorneys
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 353-2345
Attorneys for Defendant

January 22, 2008