**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**BID PROTEST**

| | | |
|---|---|---|
| **INFORMATION SCIENCES CORP.,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No.: 07-744C** |
| **UNITED STATES OF AMERICA,** | ) | **Judge Susan G. Braden** |
| **Defendant,** | ) | |
| **and** | ) | |
| **DEVELOPMENT INFOSTRUCTURE INC.,** | ) | |
| **Intervenor-Plaintiff,** | ) | |
| **and** | ) | |
| **SYMPLICITY CORP.,** | ) | |
| **Intervenor-Defendant.** | ) | |

**INTERVENOR-PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR LEAVE TO FILE RESPONSE TO PLAINTIFF'S AND INTERVENOR-PLAINTIFF'S POST-HEARING BRIEF**

Intervenor-plaintiff opposes the blatant attempt to delay the Court's resolution of this litigation through the filing of repeated motions by defendant and intervenor-defendant for "leave to file" their "responses" to prior briefing *ad nauseum* and without any reason other than to regurgitate arguments that are already fully briefed. Shortly after this case was filed, the parties agreed to expedited litigation with a prompt hearing, and the parties then agreed to two post hearing briefs. Defendant's "response" once again misrepresents the record and the prior briefing in order to gain the last word. But this "response" also offers important new admissions.

On page 3 of the "response" filed yesterday, February 21, defendant asserts that Devis made a misstatement at page 5 of Devis's post-hearing brief, filed on February 4. Specifically, defendant complains as follows:

> Devis' attempt to confuse the Court becomes more desperate later in its brief when it claims: "Indeed, *defendant* admits that 'actual price [sic] of the Symplicity proposal was only $3.7 million.'" Devis Post-Hg. Br. at 5 (emphasis added). We have *never* agreed with Devis' contrived $3.7 million price for Symplicity's initial proposal. The Court will observe that Devis has misrepresented our position by including an incomplete quote from our post-hearing brief. Id., citing US Post-Hg. Br. at 9. Had Devis fairly quoted from our brief, the Court would see that we merely summarized Devis' own argument and described the spreadsheet Devis produced at the November 2007 hearing, before explaining why Devis was wrong. US Post-Hg. Br. at 9.

Def. Response to Post-Hearing Briefs (Docket #66-2) at 3-4 (emphasis in original). But the portion of Devis's post-hearing brief about which defendant is complaining actually stated as follows:

> Through its submission of Exhibit A at the hearing, Devis demonstrated that Symplicity actually bid more than 2/3 of its pricing in ***CLIN categories that simply did not exist in the RFP***. Hearing Tr. at 137-139. Indeed, defendant admits that "actual price of the Symplicity proposal was only $3.7 million." See Def. Post-Hearing Br. at 9. See also *id*. at 10 ("the spreadsheet unveiled during rebuttal argument that Devis correctly duplicated the CO's calculations") and 3 ("The spreadsheet confirmed that Devis clearly understands how the CO calculated Symplicity's price.")

Devis Post-Hearing Brief (Docket #63) at 5 (emphasis in original). The language in quotation marks -- "actual price of the Symplicity proposal was only $3.7 million" -- was an actual quote from defendant's brief, as indicated. Defendant complains, however, that it was an unfair and incomplete quote.

Defendant's complaint proves too much. Devis specifically did ***not*** claim that defendant ***said*** that the "actual price of the Symplicity proposal was only $3.7 million." Instead, Devis claimed that "defendant ***admits*** that [the] 'actual price of the Symplicity proposal was only $3.7 million'" (emphasis added). Indeed, that is the very point in a nutshell -- Devis was drawing

attention to the fact that despite what the government was ***arguing*** in its briefs, it had actually taken the ***position*** that Devis's Exhibit 1 was ***a correct statement of the facts.*** In its own words, this how the defendant characterized Devis's Exhibit 1:

- "We now know that the spreadsheet unveiled during rebuttal argument that ***Devis correctly duplicated the CO's calculations***" (Def. Post-Hearing Br. at 9-10) (emphasis added) and

- "The spreadsheet confirmed that ***Devis clearly understands how the CO calculated Symplicity's price***" (Def. Post-Hearing Br. at 3) (emphasis added).

Defendant can't deny these plain statements from its prior brief, and its attempt to divert attention from its own words should be rejected by the Court. In fact, all that defendant's Motion for Leave to "respond" has accomplished is to lay bare the now-obvious fact that the government been playing "hide the ball" for nearly a year now -- ever since the Court issued its denial of reconsideration in the prior litigation. The government's latest brief is just another attempt to keep this game going as long as possible and to draw the Court's attention away from the merits.

It is also clear that the government does not now disavow, and has never disavowed, that Devis' Exhibit 1 is ***actually*** a correct depiction and explanation of the calculations made by the Contracting Officer in making the competitive range determination. This is effectively an ***admission of the key facts that are missing from the Administrative Record itself***.

What is even more telling, however, is that the government has now argued -- for the very first time[1] -- that "the CO's decisions to use the corrected price and include Symplicity in the competitive range was rational." Def. Response to Post-Hearing Briefs at 4.

---

[1] The government did ***not*** previously make any claim regarding any decision by the Contracting Officer to use a "corrected price." This is true notwithstanding the government's citation of pages 9-14 of its Post-Hearing Brief, which reveals no such claim or argument being made by the government.

There are three stunning admissions here: First, that the Contracting Officer "use[d] the ***corrected*** price" (emphasis added) rather than the ***actual*** price as proposed by Symplicity. This is a crucial admission and one that the government has studiously avoided making in its prior filings. Indeed, the characterization of the CO's adoption of the $12 million figure as being a "corrected price" was carefully evaded in the Contracting Officer's own sworn statement, which neither identifies his own "clerical error" nor the nature or manner in which that supposed error was "corrected." *See* Decl. of Robert Abood dated January 3, 2008 (Attachment to Def. Post-Hearing Br., Docket #46).

Second, this new terminology that defendant has injected into the case through its latest brief -- the "corrected price" -- casts an even stronger spotlight on the absence in the record of any explanation regarding the prior "clerical error" that the record unequivocally demonstrates was the ***stated basis*** of the Contracting Officer's rejection of his prior calculation that Symplicity's price was actually $1 million. *See* AR 2545. In the regard, defendant's "response" takes issues with the following argument by Devis:

> Furthermore, the contracting officer abandoned his prior determination that Symplicity's total price was $1,074,022 because, he claimed, he had made a "clerical error." However, the undisputed evidence -- Hearing Exhibit A and the accompanying declaration (Docket #35) -- demonstrates that the actual proposal price was not $12 million and ***the contracting officer did not make an $11 million "clerical error"*** in making the initial price determination. Instead, the record shows that the contracting officer ignored the fundamental CLIN structure established by the RFP and attempted to cover that up by characterizing his change as a "clerical error."
>
> . . .
>
> The ***only*** justification given anywhere in the Administrative Record for the contracting officer's decision to completely discard his own initial price determination of $1,074,220 is that "[t]his amount was a clerical error made by the Contracting Officer." AR Tab 141 at 2545. But it is clear from Exhibit A is that there was no "clerical error made by the contracting officer" that justified ignoring the first calculation of Symplicity's total price as $1,074,220. Despite numerous attempts by Devis to elicit any explanation, the government completely

> fails to explain this "clerical error made by the Contracting Officer." While the government now spins a very interesting tale, it has completely abandoned that explanation in the record.
>
> The government no longer makes any attempt to explain the "clerical error" or base its current story -- that the CLINs were optional and the Contracting Officer was obligated to correct Symplicity's errors -- on that explanation. It is a basic tenant of APA review, however, that the government cannot invent a justification that is not supported by the administrative record that was before the Contracting Officer at the time that he made the second competitive range determination. *See* Devis Br. at 16. Therefore, the Court should ignore this *post-hoc*, albeit interesting, explanation for what happened during the renewed competitive range determination. [citations omitted]

Devis Post-Hearing Br. at 6, 9-10 (emphasis in original).

In its "response" the government asserts that this argument "makes no sense" because "[a]ll parties are aware that the corrected price for Symplicity's initial proposal was just over $12 million." Def. Response to Post-Hearing Briefs at 2. Of course, the truth is quite the opposite; in fact, Devis has been asking (since before the November 29 hearing) for the government to explain the CO's supposed "clerical error" and the basis of the CO's abandonment of the $1 million figure as the true price offered by Symplicity. *See* Devis Post-Hearing Br. at 6-8. Even now, the government has no explanation, which is an ***admission that there is no explanation***.

The record actually ***states*** that there "was a clerical error made by the Contracting Officer" and that "Symplicity's proposal clearly contained accurate pricing." AR 2545. But the government now tries to turn this record on its head by asserting that what the Contracting Officer really did was to "correct" the actual pricing submitted by Symplicity in its initial proposal so that could be considered a proposal for $12 million. Thus, the government's novel assertion in its "response" that we are all "aware" that $12 million is the "corrected price" merely begs the question of exactly what "clerical error" was being "corrected" and how it possibly

could have been an ***$11 million*** "clerical error." That is a critical question because ***the record is devoid of any explanation***.

That was the reason that Devis prepared and offered Exhibit 1 to provide the Court with accurate calculations and a true identification and explanation of the actual "clerical error" that the Contracting Officer made -- an analysis of the CO's calculations that was not provided in the record and that the government has refused to provide despite repeated requests. Nonetheless, as noted above, the government does take the position that Devis's Exhibit 1 "correctly duplicated the CO's calculations" and "confirm[s] that Devis clearly understands how the CO calculated Symplicity's price" (Def. Post-Hearing Br. at 10, 3).

Third, and most importantly, contrary to the latest argument by the government, the Administrative Record itself fails to identify the $12 million amount as the "corrected price" of Symplicity's proposal. Although government repeatedly makes the grand claim that everything is explained in the briefs and in the record, one searches in vain both the record and the briefs for any such coherent explanation. Specifically, the two-page portion of the record that is repeatedly cited by defendant -- AR 2545-46-- ***never*** states that the $12 million figure is correct, ***never*** suggests that is has been "corrected" and ***never*** even gives the slightest hint that the figures listed on those two pages are anything other than the amounts taken straight from Symplicity's proposal. But, in fact, as Devis demonstrated at the hearing and in its Exhibit 1, the figures listed in the record are found ***nowhere*** in Symplicity's proposal.

Moreover, defendant's assertion at page 2 of its latest brief that "[t]he CO stated that he recalculated Symplicity's initial price to be just over $12 million," again citing AR 2545-46, is a blatant fabrication of evidence. The truth is that nowhere in AR 2545-46 does the record actually "state" that the CO "recalculated" Symplicity's pricing. Quite the contrary, the

Contracting Officer very clearly stated in the record that the pricing listed in his Competitive Range Determination was actually "Symplicity's Years 1 through 8 ***pricing from its proposal***." AR 2545 (emphasis added). That statement by the Contracting Officer was not true. And defendant's characterization of that statement at page 2 of its latest brief is also not true. In short, ***the Administrative Record of the decision in this case does not support the action being challenged***.

That was the very point of Devis's Exhibit 1. Thus, when the defendant itself ***says*** that Exhibit 1 "correctly duplicated the CO's calculations" and "confirm[s] that Devis clearly understands how the CO calculated Symplicity's price" (Def. Post-Hearing Br. at 10, 3) it is an important admission that contradicts and belies the remainder of the government's argument.

Defendant's effort to evade these critical admissions in its prior briefs by seeking "leave" to "respond" so that it can change its story yet again, recharacterize the facts, ditch its prior positions and scare the Court[2] should be rejected. This case is fully briefed and ready for action by the Court.

Dated: February 22, 2008

KIRKLAND & ELLIS LLP

By: /s Robert S. Ryland
Robert S. Ryland
(DC Bar # 419706)
655 15th Street, NW, Suite 1200
Washington, DC 20005
Tel.: (202) 879-5000
Fax: (202) 879-5200

---

2 Defendant attempts to mislead the Court by asserting that the government "may be left without a means to carry out Federal procurement" if the Court grants relief in this case, based on the planned expiration of the current GSA contract with ISC on March 30. Def. Response to Post-Hearing Briefs (Docket #66-2) at 5. The obvious answer is that the government could ***extend*** the contract with ISC. Thus, any "harm" arising from the government's decisions in this regard would be purely self-inflicted.