# In the United States Court of Federal Claims

No. 07-744C
Filed: March 31, 2009
**TO BE PUBLISHED**[*]

*******************************************

| | |
|---|---|
| INFORMATION SCIENCES CORP., | * |
| | * |
| Plaintiff, | * Adequate Documentation; |
| | * Apportionment; |
| and | * Attorney Fees; |
| | * Eligible Party; |
| GALLAGHER, HUDSON, HUDSON & | * Equal Access to Justice Act, |
| HUNSBERGER, INC. (d/b/a Development | *    28 U.S.C. § 2412; |
| InfoStructure or DEVIS), | * Miscellaneous Expenses; |
| | * Motion to Strike, RCFC 12(f); |
| Plaintiff-Intervenor, | * Overtime Expenses; |
| | * Paralegal Expenses; |
| v. | * Substantial Justification; |
| | * 48 C.F.R. §§ 15.101, 15.306(c), 15.308; |
| THE UNITED STATES, | * RCFC 83.1. |
| | * |
| Defendant, | * |
| | * |
| and | * |
| | * |
| SYMPLICITY CORP., | * |
| | * |
| Defendant-Intervenor. | * |
| | * |

*******************************************

**William A. Shook**, Kirkpatrick & Lockhart Preston Gates Ellis LLP, Washington, D.C., for Plaintiff.
**Robert S. Ryland**, Kirkland & Ellis LLP, Washington, D.C., for Plaintiff-Intervenor.

**Gregg M. Schwind**, United States Department of Justice, Washington, D.C., for Defendant.
**Richard L. Moorhouse**, Greenberg Traurig LLP, Washington, D.C., for Defendant-Intervenor.[**]

---

[*] On March 31, 2009, this Memorandum Opinion and Order was published with redactions, indicated by the designation "[deleted]."  The non-redacted version was also filed on March 31, 2009 under seal with the Clerk of the United States Court of Federal Claims.

[**] Counsel for Defendant-Intervenor Symplicity Corp. elected not to participate in the briefing of Plaintiff's and Plaintiff-Intervenor's Applications for attorney fees and expenses.

**MEMORANDUM OPINION AND FINAL ORDER
REGARDING ATTORNEY FEES AND EXPENSES.**

**Braden,** *Judge*.

        To facilitate review of this Memorandum Opinion and Final Order, the court has provided
the following outline:

**I.      THE COURT'S PRIOR DECISIONS AND PROCEDURAL HISTORY.**

**II.     DISCUSSION.**

        **A.      Jurisdiction.**

        **B.      Standing.**

        **C.      The Equal Access To Justice Act, 28 U.S.C. § 2412.**

        **D.      Standard Of Review.**

        **E.      Plaintiff's And Plaintiff-Intervenor's Motions For Attorney Fees And Expenses
                Under The Equal Access For Justice Act.**

                **1.      Plaintiff And Plaintiff-Intervenor Are "Eligible Parties."**

                        **a.      Plaintiff's And Plaintiff-Intervenor's Arguments.**

                        **b.      The Government's Response.**

                        **c.      Plaintiff's And Plaintiff-Intervenor's Replies.**

                        **d.      The Court's Request For Additional Submissions.**

                        **e.      The Court's Resolution.**

                **2.      Plaintiff and Plaintiff-Intervenor Are "Prevailing Parties."**

                **3.      The Government's Position In The Underlying Suit Was Not
                        "Substantially Justified."**

                        **a.      The Government's Argument.**

                        **b.      Plaintiff's And Plaintiff-Intervenor's Responses.**

                        **c.      The Court's Resolution.**

4.      **Plaintiff And Plaintiff-Intervenor Are Entitled To Attorney Fees.**

      a.      **The Government's Argument.**

      b.      **Plaintiff And Plaintiff-Intervenor's Responses.**

      c.      **The Court's Resolution.**

            I.      **Plaintiff's And Plaintiff-Intervenor's Attorney Fees Applications Were Documented, And Were Neither Excessive, Nor Duplicative.**

            ii.     **Plaintiff's And Plaintiff-Intervenor's Attorney Fees Should Not Be Apportioned In This Case.**

5.      **Plaintiff And Plaintiff-Intervenor Are Entitled To Paralegal Fees.**

      a.      **The Government's Argument.**

      b.      **Plaintiff's And Plaintiff-Intervenor's Responses.**

      c.      **The Court's Resolution.**

6.      **Plaintiff And Plaintiff-Intervenor Are Entitled To Miscellaneous Expenses.**

      a.      **The Government's Argument**.

      b.      **The Plaintiff's And Plaintiff-Intervenor's Responses.**

      c.      **The Court's Resolution.**

F.      **The Total Amount Awarded.**

III.     **CONCLUSION.**

\* \* \*

## I.     THE COURT'S PRIOR DECISIONS AND PROCEDURAL HISTORY.

On December 22, 2005, Information Sciences Corporation ("ISC") filed a protest of the award of the Federal Business Opportunities ("FBO") Contract by the General Services Administration ("GSA") to Symplicity Corporation ("Symplicity"). On December 29, 2005,

Gallagher, Hudson, Hudson, and Hunsberger, Inc. ("DEVIS") filed a Motion to Intervene, which the court granted.

Following extensive briefing and argument, on September 19, 2006, the court filed a Memorandum Opinion and Final Order that set aside GSA's December 7, 2005 contract award, because the GSA violated Federal Acquisition Regulation ("FAR") 15.308 by failing to exercise independent judgment. *See Info. Scis. Corp.* v. *United States*, 73 Fed. Cl. 70, 120-21 (2006) (*"Info. Scis. I"*).

On May 27, 2007, DEVIS filed an Application For Attorney Fees And Expenses.  On October 25, 2007, the court issued a Memorandum Opinion And Final Order Regarding Attorney Fees And Expenses, awarding DEVIS attorney fees and expenses.  *See Info. Scis. Corp.* v. *United States*, 78 Fed. Cl. 673, 685 (2007) (*"Info. Scis. II"*).

\* \* \*

On October 24, 2007, ISC filed a protest of the re-award of the FBO Contract by the GSA to Symplicity.  DEVIS also protested the re-award, filing a Motion To Intervene on October 29, 2007, which the Court granted.

Following extensive briefing and argument, on March 18, 2008, the court issued a Memorandum Opinion and Final Order setting aside the GSA's "best value" determination, because GSA violated FAR 15.101 and FAR 15.308 by failing to assign adjectival ratings and improperly according equal weight to price and non-price factors contrary to the Solicitation's requirements. *See Info. Scis. Corp.* v. *United States*, 80 Fed. Cl. 759, 791-93 (2008) (*"Info. Scis. III"*).  The court then set aside the September 28, 2007 re-award contract.  *Id.* at 800.

On June 17, 2008, DEVIS filed a second Application For Fees  ("Int. EAJA App."), pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 ("EAJA"), together with Exhibits ("Int. EAJA App. Ex. A-D").  On June 18, 2008, ISC also filed an EAJA Application For Fees ("Pl. EAJA App."), together with Exhibits ("Pl. EAJA App. Ex. A-D").

On July 18, 2008, the Government filed a Response to DEVIS' June 17, 2008 EAJA Application ("Gov't Resp. DEVIS"), and on July 21, 2008, the Government filed a Response to ISC's June 18, 2008 EAJA Application ("Gov't Resp. ISC").

On August 4, 2008, DEVIS filed a Reply ("Int. Reply"), together with three Exhibits ("Int. Reply Ex. A-C").  On August 8, 2008, the Government filed a Motion For Leave To File A Sur-Reply to DEVIS' August 4, 2008 Reply, which the court granted.  On August 14, 2008, ISC filed a Reply ("Pl. Reply"), together with five Exhibits.  On August 26, 2008, the Government filed a Sur-Reply.

On September 15, 2008, DEVIS filed a Motion To Strike Defendant's Sur-Reply Or For Leave To File A Sur-Rebuttal ("Int. Mot. Strike").  On October 1, 2008, the Government filed an

Opposition thereto ("Gov't Opp'n Mot. Strike"). On October 14, 2008, DEVIS filed a Reply ("Int. Reply Mot. Strike").[1]

On January 6, 2009, ISC filed a Motion For Leave To Supplement Plaintiff's Application For Fees, together with Exhibits ("Pl. Mot. Supp. Ex. A-B"). On January 23, 2009, the Government filed a Response To Plaintiff's Motion For Leave To Supplement ("Gov't Resp. Mot. Supp."), together with Exhibits.

On February 19, 2009, DEVIS filed a Response To Request For Supplemental Submission In Support Of Application For Fees, together with two Exhibits ("DEVIS Supp. Sub. Ex. 1-2"). On March 5, 2009, the Government filed an Objection to DEVIS' supplemental submission ("Gov't DEVIS Object."), together with an Exhibit. On March 6, 2009, ISC filed a Response To Request For Supplemental Submission In Support Of Application For Fees, together with an Exhibit ("ISC Supp. Sub. Ex. 1"). On March 9, 2009, the Government filed an Objection ("Gov't ISC Object.")

---

[1] On September 15, 2008, DEVIS filed a Motion To Strike Defendant's Sur-Reply, arguing that the court "was misled by the Government into granting a Sur-Reply on the basis that there were 'new' issues raised by DEVIS in its Reply brief that necessitated yet further briefing." Int. Mot. Strike at 1. In addition, DEVIS asserted that the Government "improperly used the Court's granting of the Sur-Reply as the basis for filing a brief that does not address any such supposed 'new' issues." *Id.*

The Government responded that a motion to strike, filed pursuant to Rule 12(f) of the Rules of the United States Court of Federal Claims, is limited only to pleadings. *See* Gov't Opp'n Mot. Strike at 3. Moreover, motions to strike "are viewed with disfavor by the federal courts and are infrequently granted." *Id.* (quoting 5C Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1380 (3d ed. 2004)). Typically, trial courts construe a motion to strike as a response to the filing that the motion attacks. *Id.* at 3. Further, the court should deny a motion to strike, if a party fails to show that the pleading in question resulted in prejudice or confusion. *Id.* Moreover, DEVIS failed to show that it was prejudiced or confused by the Government's Sur-Reply. *Id.*

Generally, "[c]ourts view Motions to Strike with disfavor and rarely grant them." *Fisherman's Harvest, Inc.* v. *United States*, 74 Fed. Cl. 681, 690 (2006). It has been the practice of the United States Court of Federal Claims to decline to grant a motion to strike, where the moving party is unable to show prejudice or confusion. *See Impresa Construzioni Geom. Domenico Garufi* v. *United States*, 61 Fed. Cl. 175, 177 (2004) (refusing to grant a motion to strike, because "the referenced material creates no prejudice or confusion in this matter"), *appeal voluntarily dismissed,* 125 Fed. Appx. 310 (Fed. Cir. 2005). Instead, the court "may regard a motion to strike . . . simply as a response to that motion." *Fisherman's Harvest*, 74 Fed. Cl. at 690.

In this case, DEVIS failed to articulate how it was prejudiced or confused by the Government's Sur-Reply. *See* Int. Mot. Strike at 1; Int. Reply Mot. Strike at 4. Therefore, the court denies DEVIS' September 15, 2008 Motion To Strike, but will consider it as a responsive filing. *See Fisherman's Harvest*, 74 Fed. Cl. at 690.

to ISC's supplemental submission, together with Exhibits.  On March 19, 2009, DEVIS filed a Reply To Defendant's Objections.  On March 23, 2009, ISC filed a Reply To Defendant's Objections.[2]

## II.    DISCUSSION.

### A.    Jurisdiction.

The United States Court of Federal Claims has "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."  28 U.S.C. § 1491(a)(1).  The Tucker Act, however, is "only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages."  *United States* v. *Mitchell*, 445 U.S. 535, 538 (1980) (quoting *United States* v. *Testan*, 424 U.S. 392, 398 (1976)).  Therefore, in order to come within the jurisdictional reach of the Tucker Act, a plaintiff must identify and plead a constitutional provision, federal statute, independent contractual relationship, and/or executive agency regulation that provides a substantive right to money damages.  *See Todd* v. *United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004) ("[J]urisdiction under the Tucker Act requires the litigant to identify a substantive right for money damages against the United States separate from the Tucker Act itself.").

ISC's June 18, 2008 Application For Fees and DEVIS' June 17, 2008 Application For Fees invoke the EAJA as a basis for the court's jurisdiction.  *See* Pl. EAJA App. ¶ 5; Int. EAJA App. ¶¶ 4-5.  The EAJA provides that "a [federal trial] court shall award to a prevailing party other than the United States fees and other expenses . . . in any civil action . . . brought by or against the United States *in any court having jurisdiction of that action*[.]"  28 U.S.C. § 2412(d)(1)(A) (emphasis added).  Since the United States Court of Federal Claims had jurisdiction over the October 24, 2007 Complaint and the October 29, 2007 Motion To Intervene, the court also had jurisdiction to adjudicate ISC's and DEVIS' subsequent attorney fees and expense claims.  *See Burkhardt* v. *Gober*, 232 F.3d 1363, 1367 (Fed. Cir. 2000) ("We hold that the EAJA language in question, 'having jurisdiction of that action,' is plain, clear, and unambiguous. The words 'that action' clearly refer to the preceding language in the EAJA reciting the 'civil action . . . brought by or against the United States.'").  Since the court had jurisdiction over the initial bid protest, the court has jurisdiction to hear each party's claim for attorney fees and expenses.  *See Info. Scis. III*, 80 Fed. Cl. at 776 ("These allegations recite a sufficient basis for the court to exercise jurisdiction[.]").

### B.    Standing.

The United States Supreme Court has stated that "the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues."  *Warth* v. *Seldin*, 422 U.S. 490, 498 (1975).  Standing must be determined "as of the commencement of suit."  *Rothe Dev. Corp.* v. *Dep't of Def.*, 413 F.3d 1327, 1334 (Fed. Cir. 2005) (quotation

---

[2] These motions were filed in response to a February 2, 2009 request by the court for supplemental briefing.  *See* 2/2/09 Status Conference TR at 6.

omitted).   The party invoking federal jurisdiction bears the burden of establishing standing.  *See Lujan* v. *Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  Specifically, to establish standing, "a plaintiff must show [that] it has suffered an 'injury in fact' that is . . . concrete and particularized and . . . actual or imminent, not conjectural or hypothetical; . . . the injury is fairly traceable to the challenged action of the defendant; and . . . it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc*. v. *Laidlaw Envtl. Serv., Inc*., 528 U.S. 167, 180-81 (2000) (citing *Lujan*, 504 U.S. at 560-61).

ISC's June 18, 2008 EAJA Application states that ISC was the "prevailing party" in the underlying litigation.  *See* Pl. EAJA App. ¶ 4.  In addition, ISC's Application is supported by an Exhibit showing attorney time entries and costs incurred in the preparation of ISC's October 24, 2007 bid protest.  *See* Pl. EAJA App. Ex. B.  Accordingly, ISC has standing to claim attorney fees and costs incurred before the United States Court of Federal Claims.

DEVIS' June 17, 2008 Application also states that DEVIS was the "prevailing party" in the underlying litigation.  *See* Int. EAJA App. ¶ 10.  This statement is supported by an exhibit showing attorney time entries and costs incurred in pursing the re-award bid protest before the court.  *See* Int. EAJA App. Ex. B.  Accordingly, DEVIS also has standing to claim attorney fees and costs incurred before the United States Court of Federal Claims.

## C.   The Equal Access To Justice Act, 28 U.S.C. § 2412.

Section 2412 of the EAJA provides that:

> [A] court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action . . . including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).

The EAJA "departs from the general rule that each party to a lawsuit pays his or her own legal fees." *Scarborough* v. *Principi*, 541 U.S. 401, 404-05 (2004).  Instead, the EAJA authorizes the trial court to award attorney fees, where: "(I) the claimant is a prevailing party; (ii) the government's position was not substantially justified; (iii) no special circumstances make an award unjust; and (iv) the fee Application is timely submitted and supported by an itemized statement." *Libas, Ltd.* v. *United States*, 314 F.3d 1362, 1365 (Fed. Cir. 2003) (quotations omitted).

A party seeking fees, pursuant to the EAJA, must be the "prevailing party."  *See* 28 U.S.C. § 2412(d)(1)(A).   "Party" is defined as a corporation with a net worth that does not exceed $7,000,000 and has no more than 500 employees at the time the action was filed.  *Id.* § 2412(d)(2)(B).  If a plaintiff establishes status as a "prevailing party," however, the burden of proof then shifts to the Government to demonstrate that its position was "substantially justified." *Id.* §

2412(d)(1)(A) ("A court shall award to a prevailing party other than the United States fees and other expenses . . . unless the court finds that the position of the United States was substantially justified."); *Scarborough*, 541 U.S. at 414 (holding that EAJA Section 2412(d)(1)(A) requires "that the position that the United States was substantially justified" [be] "shouldered by the Government."); *RAMCOR Servs. Group, Inc.* v. *United States*, 185 F.3d 1286, 1290 (Fed. Cir. 1999) (Since EAJA is not a mandatory fee-shifting statute, the trial court must determine if the Government's position "had a 'reasonable basis in law and fact.'" (citing *Pierce* v. *Underwood*, 487 U.S. 552, 566 (1988))).

### D.      Standard Of Review.

In *Hubbard* v. *United States*, 480 F.3d 1327 (Fed. Cir. 2007), the United States Court of Appeals for the Federal Circuit stated that the "trial court has considerable discretion in determining reasonable attorney fees." *Id.* at 1334-35 (citing *Hensley* v. *Eckerhart*, 461 U.S. 424, 437 (1983) (holding that, under Civil Rights Attorney Fees Awards, 42 U.S.C. § 1988, "the [trial] court has discretion in determining the amount of a fee award. This is appropriate in view of the [trial] court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters. It remains important, however, for the [trial] court to provide a concise but clear explanation of its reasons for the fee award.")).

### E.      Plaintiff's And Plaintiff-Intervenor's Motions For Attorney Fees And Expenses Under The Equal Access For Justice Act.

#### 1.      Plaintiff And Plaintiff-Intervenor Are "Eligible Parties."

##### a.      Plaintiff's And Plaintiff-Intervenor's Arguments.

ISC has represented that the company's net worth did not exceed $7,000,000 when the October 24, 2007 Complaint was filed. *See* Pl. EAJA App. ¶ 4. In support, ISC submitted a June 18, 2008 Declaration of Mr. Gregory Pornoy, ISC President, and an unaudited ISC Balance Sheet as of October 24, 2007. *See* Pl. EAJA App. Ex. A, B. In addition, on January 6, 2009, ISC filed a supplemental brief, together with an Auditors's Report by Flynn, Abell & Associates, LLC, Certified Public Accountants, representing that, as of December 31, 2007, ISC had total assets of $[deleted]. *See* Pl. Mot. Supp. Ex. A at 3.

DEVIS also represented that on October 24, 2007, the date the Complaint was filed, and on October 26, 2007, when DEVIS filed a Motion To Intervene, the company did not exceed either the financial or the employee limits imposed by the EAJA. *See* Int. EAJA App. ¶ 4. In support, DEVIS filed a June 17, 2008 Declaration of DEVIS' President, Mr. Martin Hudson. *See* Int. EAJA App. Ex. A at 2 ("In October 2007, DEVIS' net worth did not exceed $7,000,000. At that time, DEVIS' net worth was approximately $[deleted], as reflected in its annual corporate financial review as of December 31, 2007."). In addition, on June 17, 2008, DEVIS proffered 2006 and 2007 Financial Statements, prepared by McGladrey & Pullen, Certified Public Accountants, to that effect. *See* Int. EAJA App. Ex. A.

b.      The Government's Response.

The Government responded that ISC's balances are "unaudited" and that the $[deleted] "equity" section of ISC's balance sheet was not added to ISC's total assets. *See* Gov't Resp. ISC at 9-10 (citing John Downes & Jordan Elliot Goodman, DICTIONARY OF FIN. AND INV. TERMS 512 (5th ed. 1998)). In addition, the Government claimed that the "documentation provided by ISC . . . fails to indicate whether it has any affiliated entities and fails to provide any information about the structure of ISC." *Id.* at 9. The Government stated that ISC passes through the income to a 100 percent shareholder (Mr. Gregory Portnoy, ISC's President). *Id.* at 9-10. Accordingly, the court should aggregate the assets of the owner with that of the company for the purposes of determining EAJA eligibility. *Id.* at 10.

The Government also claimed that DEVIS failed to establish that it is an eligible "party," because a plaintiff is required to provide detailed records evidencing compliance with EAJA size limitations on the day that the complaint was filed. *See* Gov't Resp. DEVIS at 7-8. A narrative affidavit, without further evidence, is not enough to support an EAJA Application. *Id.* On this basis, the Government challenged the June 17, 2008 Martin Declaration as insufficient to demonstrate DEVIS' net worth. *Id.* The 2006 and 2007 DEVIS Financial Statements are only a "financial review," falling short of the generally accepted accounting principles ("GAAP"). *Id.* at 8. Moreover, the Government contended that the information provided is insufficient, because it only provided an accounting of DEVIS's finances as of December 31, 2007, rather than October 24, 2007, the date the Complaint was filed. *See* Gov't Resp. Mot. Supp. at 4.

The Government further maintained that "DEVIS and [Gallagher, Hudson, Hudson, and Hunsberger, Inc.] are closely-held, Subchapter S corporations," and, because "DEVIS passes through its income to a small group of shareholders, the [c]ourt should aggregate the assets of its owners for purposes of determining EAJA eligibility." *Id.* at 7.

c.      Plaintiff's And Plaintiff-Intervenor's Replies.

On January 6, 2009, ISC filed a Motion To Supplement, together with Exhibit A – Flynn, Abell & Associates, LLC, Certified Public Accountants, Auditor's Report. *See* Pl. Mot. Supp. Ex. A at 2. This Auditor's Report represented that, as of December 31, 2007, ISC had total assets of $[deleted]. *Id.* at 3.[3]

DEVIS also reaffirmed that it has provided sufficient documentation to establish that the company's net worth was below the EAJA statutory cutoff at the time the Complaint was filed. *See* Int. Reply at 3. Moreover, DEVIS asserted that the Government has offered no reason as to why DEVIS' documentation was not reliable. *Id.* at 3-4.

---

[3] Since ISC's January 6, 2009 Motion To Supplement provides a certified accounting and does not prejudice the Government, the court grants Plaintiff's January 6, 2009 Motion and accepts Exhibit A as part of ISC' EAJA Application. *See* RCFC 15(d); *Remediation Constructors, Inc.* v. *United States*, 68 Fed. Cl. 162, 167 (2005) (granting a motion to supplement that "w[ould] promote judicial economy and . . . not prejudice the Government.").

### d.     The Court's Request For Additional Submissions.

On February 2, 2009, the court held a status conference requesting that ISC and DEVIS file supplemental information to verify that their individual net worth was less than $7,000,000, on October 24, 2007, the date the re-award protest Complaint was filed.  Previously, each party had submitted an accounting as of December 31, 2007, instead of the date the Complaint was filed.  *See* Pl. Mot. Supp. Ex. A at 2; Int. EAJA App. Ex. A at 5.

On February 19, 2009, DEVIS filed an "Interim Accounting Report," and a Declaration of Martin Hudson, President of DEVIS, identifying and verifying the data of the "interim accounting report."  *See* DEVIS Supp. Sub. Ex. 1-2.  The "Interim Accounting Report" and the Hudson Declaration both state that, as of October 24, 2007, DEVIS' net worth was $[deleted].  *Id*. Ex. 1 at 2-4.  In addition, DEVIS filed the February 19, 2009 Declaration of Rodney Saunders, a Certified Public Accountant for DEVIS for the last thirteen years.  *Id*. Ex. 2 at 1.  The Saunders Declaration stated that  "it would not have been possible for DEVIS to achieve a net worth of $7 million at any time during the 2007 calendar year." *Id.* at 2.  Both Declarations attested that DEVIS' net worth was calculated according to the standards of the American Institute of Certified Public Accountants.  *See* DEVIS Supp. Sub. Ex. 1 at 2, Ex. 2 at 2.

On March 5, 2009, the Government filed an objection to DEVIS' supplemental submission, arguing that it was insufficient, because DEVIS' October 24, 2007 interim accounting was neither audited nor certified by an independent accountant.  *See* Gov't DEVIS Object. at 3.

On March 6, 2009, ISC filed an Independent Auditor's Report, prepared by Flynn, Abell & Associates, LLC, Certified Public Accountants.  *See* ISC Supp. Sub. Ex. 1.  This Report is an audit of ISC's balance sheet and shows ISC's net worth was less than $7,000,000 as of October 24, 2007.  *Id.* at 3.

On March 9, 2009, the Government filed an objection to ISC's supplemental submission.  *See* Gov't ISC Object.  The Government also renewed opposition to the deposition testimony of ISC's President, questioning the accuracy of any financial statement, on the assumption that some of ISC's account information may have been "lost" when ISC changed accountants in 2008.  *Id.* at 4.  Therefore, ISC's most recent financial submissions were not reliable, because ISC's prior submissions have different numerical values for the company's net worth.  *Id.*

### e.     The Court's Resolution.

The plaintiff bears the burden of establishing that it meets the net worth requirements imposed by the EAJA.  *See Asphalt Supply & Serv., Inc.* v. *United States,* 75 Fed. Cl. 598, 601 (2007) ("The plaintiff bears the burden of demonstrating that it meets the restriction established for eligible corporate parties under the EAJA."); *see also Al Ghanim Combined Group Co.* v. *United States*, 67 Fed. Cl. 494, 496 (2005) ("[An EAJA applicant] must show that its [] net worth is less than $7 million at the time the action was filed[.]").  Therefore, a plaintiff requesting fees under the EAJA must "present sufficient evidence so that his or her net worth may be ascertained and verified

by the court." *Fields* v. *United States*, 29 Fed. Cl. 376, 382 (1993), *aff'd*, 64 F.3d 676 (Fed. Cir. 1995) (unpublished).  Self-serving affidavits and unaudited balances, alone, are not considered sufficient to establish a plaintiff's net worth.  *See Doe* v. *United States*, 54 Fed. Cl. 337, 342 (2002) (stating that "self-serving, unsupported" affidavits are not sufficient to establish net worth); *Scherr Constr. Co.* v. *United States*, 26 Cl. Ct. 248, 251 (1992) (same).  The financial information must allow the court to determine the net worth of the applicant at the time a complaint was filed.  *See Asphalt Supply & Serv.,* 75 Fed. Cl. at 601 (rejecting net worth information describing the company's finances five months prior to the complaint's filing); *Al Ghanim Combined Group*, 67 Fed. Cl. at 496 ("Failure to submit documentation of plaintiff's net worth, for the purpose of determining whether plaintiff qualifies for an award under EAJA, renders an Application deficient.").

ISC's Supplemental Submission included an independent audited balance sheet, as of October 24, 2007, the date the re-award protest Complaint was filed, shows that ISC's total assets were $[deleted] and ISC's total liabilities were $[deleted].  *See* ISC Supp. Sub. Ex. 1 at 3.  Our predecessor court has held that net worth is calculated by subtracting a company's total liabilities from total assets.  *See Scherr Constr. Co.*, 26 Cl. Ct. at 248.  Therefore, the court has determined that ISC established a net worth of $[deleted], [deleted] below the statutory maximum of $7,000,000.  *See* 28 U.S.C. § 2412(d)(2)(B).  The balance sheet was audited "in accordance with auditing standards generally accepted in the United States of America."[4]  Despite the Government's continued argument that ISC's financial information is suspect, the court is satisfied that ISC has submitted sufficient information for the court to "ascertain and verify" ISC's net worth.  *See Fields*, 29 Fed. Cl. at 382 (finding that plaintiff met the burden of proof when, sufficient evidence is submitted for the court to "ascertain and verify" plaintiff's net worth).

DEVIS' June 17, 2008 EAJA Application included a Financial Report, prepared by McGladrey & Pullen, Certified Public Accountants, providing an accounting of DEVIS's financial information, as of December 31, 2006 and 2007.  *See* DEVIS EAJA App. Ex. A Attach. 1.  In the Supplemental Submission, DEVIS resubmitted the 2006 and 2007 Financial Report, along with a 2005 and 2006 Financial Report and a Program for Review Engagements, describing the steps involved in a financial review, and an unaudited Balance Sheet as of October 24, 2007.  *See* DEVIS Supp. Sub. Ex. 1-2.  This documentation shows DEVIS' net worth was [deleted] less than $7,000,000 on each of these dates.[5]  *Id.* at Ex. 1 at 4; Ex 2 at 8, 23.  DEVIS also filed the Hudson Declaration, which is a declaration by the accountant at McGladrey & Pullen in charge of the annual review of DEVIS' accounting.  *Id.* at Ex. 2 at 1.  The Hudson Declaration states that, based on a

---

[4] Generally Accepted Auditing Standards ("GAAS") are similar to GAAP in that both are rules and guidelines promulgated by the American Institute of Certified Public Accountants' Auditing Standards Board. *See* Joel G. Siegel & Jae K. Shim, Dictionary of Accounting Terms 204 (3d ed. 2000).  CPAs typically use GAAS in preparing for an performing audit of a client's financial statement.  *Id.*

[5] The audited Financial Reports show DEVIS' net worth was: $[deleted], as of December 31, 2005; $[deleted], as of December 31, 2006; and $[deleted], as of December 31, 2007.  *See* DEVIS Supp. Sub. Ex 2 at 8, 23.  DEVIS' unaudited balance sheet shows the company's net worth was $[deleted], as of October 24, 2007.  *See* DEVIS Supp. Sub. Ex. 1 at 4.

review of the 2006 and 2007 Financial Report, "it would not have been possible for DEVIS to achieve a net worth of $7 [m]illion at any time during the 2007 calendar year." *Id.* at 2. The Government, however, contended that this affidavit is inadequate and that, without an audited October 29, 2007 Balance Sheet, the date DEVIS intervened, DEVIS cannot satisfy the requisite burden of proof. *See* Gov't DEVIS Object. at 3.

Although the court has found unsupported party affidavits insufficient to establish net worth, the Hudson Declaration is an affidavit by a third party Certified Public Accountant, supported by two sets of audited financial reports. *See* DEVIS Supp. Sub. Ex. 2 at 2. In addition, the Hudson Declaration categorically stated that DEVIS' net worth was below $7,000,000, both at the time the Complaint was filed and when DEVIS intervened. *Id.* Therefore, the court has determined that DEVIS presented sufficient evidence for the court to "ascertain and verifi[y]" that DEVIS' net worth was below $7,000,000 when the Complaint was filed and when the Motion To Intervene was filed.

As for the Government's aggregation argument, the EAJA does not authorize aggregating the net worth of affiliated companies or shareholders. *See* 28 U.S.C. § 2412(d)(2)(B)(ii) ("'party' means . . . any owner of an unincorporated business, or any partnership, corporation, association, unit of local government, or organization, the net worth of which did not exceed $7,000,000 at the time the civil action was filed, and which had not more than 500 employees at the time the civil action was filed[.]"); *Lion Raisins* v. *United States*, 57 Fed. Cl. 505, 510 (2003) ("The government's argument . . . conflicts with the plain language of the statute, which expressly lists as eligible for fees any association . . . the net worth of which did not exceed $7,000,000.") (internal quotation and citation omitted). Accordingly, the United States Court of Federal Claims has declined to aggregate assets, where "certain members of [the plaintiff company's] family have ownership interests in [other] companies, [but] each company has its own set of books, tax returns, insurance policies, workers compensation policies, and bank accounts, and at no point are combined for . . . reporting internally or externally." *Id.*

In this case, there is no evidence in the Administrative Record, or otherwise, that either ISC or DEVIS had a contractual or other relationship with any other entity. *See* Pl. EAJA App. Ex. A ¶ 1 (Portnoy Decl.) ("ISC is a corporation duly organized under the laws of Maryland[.]"); Int. EAJA App. Ex. A ¶ 6 (Hudson Decl.) ("DEVIS is a Subchapter S Corporation for tax purposes and has no 'affiliated entities,' subsidiaries, parent corporations, partners, external directors or shareholders, equity interest in another entity, and is not a party to any joint venture or other legal entities nor has it had any such affiliations since it was incorporated in 1992."). In addition, there is no evidence that either company is a joint venture, has overlapping management, ownership with another entity, receives income from any other entity, or has a different entity funding these legal proceedings in the United States Court of Federal Claims.

Moreover, the Government's assertion that the "real part[ies] in the underlying litigation" are the company's shareholders, has no basis in law. *See* Gov't Resp. DEVIS at 7. The plain language of the EAJA provides that a company's net worth, not the net worth of the company's constituent members, is the prerequisite for eligibility. *See* 28 U.S.C. § 2412(d)(2)(B) ("any partnership, corporation, association, unit of local government, or organization, the net worth of which did not exceed $7,000,000 at the time the civil action was filed"); *Tex. Food Indus. Ass'n* v. *United States*,

81 F.3d 578, 582 (5th Cir. 1996) ("In order to deny the benefits of an EAJA award to an association's wealthy, ineligible members, [the Government] would have us unfairly exclude from EAJA's clear reach an association's eligible members.").

For these reasons, the court has determined that ISC and DEVIS established that each party did not have a net worth exceeding $7,000,000, either on October 24, 2007, the date on which ISC's Complaint was filed, or on October 26, 2007, the date of DEVIS' Motion To Intervene.

### 2.       Plaintiff and Plaintiff-Intervenor Are "Prevailing Parties."

The Government does not dispute that ISC and DEVIS are "prevailing parties." *See* Gov't Resp. ISC at 12-13; Gov't Resp. DEVIS at 8-9.

### 3.       The Government's Position In The Underlying Suit Was Not "Substantially Justified."

#### a.       The Government's Argument.

The Government argued that the court should reject ISC's and DEVIS' fee Applications, because the Government's position in the underlying protest was "substantially justified." *See* Gov't Resp. ISC at 12-22; Gov't Resp. DEVIS at 8-19.  The court's resolution of all of the arguments presented by ISC,[6] and almost all of the arguments presented by DEVIS, were in favor of the Government.  *See* Gov't Resp. ISC at 14; Gov't Resp. DEVIS at 10.

_____

[6] The Government is correct that the court rejected ISC's argument that the Contracting Officer was required to conduct offeror discussions after establishing the competitive range.  *See Info. Scis. III*, 80 Fed. Cl. at 776 ("The text of FAR 15.306(c)(1) . . . provides that setting a competitive range is required only if discussions are to be conducted, but not the reverse.").

A leading and valued government contract scholar, however, has questioned the court's conclusion.  *See* Ralph C. Nash, *Discussions After Establishing The Competitive Range: Are They Mandatory?*, 22 No. 6 NASH & CIBINIC REPORT ¶¶ 34-35 (June 2008) ("[T]here is a problem with the court's conclusion in that it omits any discussion of FAR 15.306(d)(3), which states the following mandatory requirement after a competitive range has been established: 'At a minimum, the contracting officer must, subject to paragraphs (d)(5) and (e) of this section and 15.307(a), indicate to, or discuss with, each offeror still being considered for award, deficiencies, significant weaknesses, and adverse past performance information to which the offeror has not yet had an opportunity to respond.'") (quoting 48 C.F.R. § 15.306(d)(3)).  The court clarifies here that FAR 15.306(d) was considered in interpreting FAR 15.306(c)(1), but the court separately determined that FAR 15.306(d) requires discussions *after* setting the competitive range, only *when* an agency elects to conduct discussions in the first place.  *See* 48 C.F.R. 15.306(d) ("*When* negotiations are conducted in a competitive acquisition, they take place *after* establishment of the competitive range and are called discussions.") (emphasis added).  In this case, the relevant Solicitation authorized the agency to make an award without discussions.  *See* AR 144 (RFP § L.10); 48 C.F.R. § 15.306(a)(3) ("Award may be made *without discussions* if the solicitation states that the Government intends to evaluate proposals and make award without discussions.") (emphasis added).

The Government also asserted that its position, as to the three errors identified by the court, was "substantially justified." *See* Gov't Resp. ISC at 15-22; Gov't Resp. DEVIS at 11-19. First, the agency's conclusion that ISC's and Symplicity's proposals received "similar" technical ratings was "substantially justified," because ISC's underlying technical ratings of "Marginal" (Majority Technical Report), "Acceptable" (Minority Technical Report), and "Acceptable" (Mitretek Technical Report) were "similar" to Symplicity's underlying ratings of "Unacceptable" (Majority Technical Report), "Acceptable" (Minority Technical Report), and "Acceptable" (Mitretek Technical Report). *See* Gov't Resp. ISC at 15-16; Gov't Resp. DEVIS at 12-13.

Second, the Government was "substantially justified,", because the Source Selection Authority ("SSA") concluded that ISC's and DEVIS' superior technical ratings did not justify the $21 million or $9.8 million "price premium" over the Symplicity proposal. *See* Gov't Resp. ISC at 17-18 ("There is no evidence that the SSA did not understand that technical factors were significantly more important than price, or that he failed to give technical ratings more weight than price.") (citing AR 2561-62) (Sept. 13, 2007 Source Selection Decision); Gov't Resp. DEVIS at 14-15 (citing same). Moreover, the Government was "substantially justified" in arguing that Symplicity's proposal met the Solicitation's minimum requirements for system transition, because the "Minority" Technical Report's concerns regarding Symplicity's staffing were not severe enough to disqualify Symplicity's proposal. *See* Gov't Resp. ISC at 19-21 (citing AR 971) (April 6, 2005 Minority Report: Symplicity) ("As the [M]inority points out elsewhere within this attachment, additional staff support may come from other staff assigned to development and implementation activities. Staffing may also be reallocated from that proposed for operations, maintenance, and enhancement labor[.]"); Gov't Resp. DEVIS at 16-17 (citing same).

Third, the Government argued that the court was mistaken in characterizing the identified errors as violations of FAR 15.101 and 15.308, because these errors were violations only of the relevant Solicitation provisions or an abuse of discretion. *See* Gov't Resp. ISC at 21-22 (citing *Galen Med. Assocs.* v. *United States*, 369 F.3d 1324, 1329 (Fed. Cir. 2004) ("[A] bid award may be set aside if either (1) the procurement official's decision lacked a rational basis, or (2) the procurement procedure involved a violation of regulation or procedure[.])); Gov't Resp. DEVIS at 17-19 (citing same).

### b.    Plaintiff's And Plaintiff-Intervenor's Responses.[7]

As to the three specific errors that the court identified, ISC and DEVIS respond that the Government's first argument that their proposals received "similar" technical ratings is irrelevant, because the court concluded that the SSA's action both exceeded the lawful authority and was not supported by the record. Pl. Reply at 7-8 (citing *Info. Scis. III,* 80 Fed. Cl. at 790).

Second, as to the Government's contention that the SSA's "best value" decision was "substantially justified," DEVIS responded that the court held that the SSA's "best value" decision

---

[7] ISC's August 14, 2008 Reply quotes extensively from DEVIS' August 4, 2008 Reply. Therefore, the court primarily references DEVIS' August 4, 2008 Reply, because it was the first filed.

violated FAR 15.308.  *See* Int. Reply at 10 (citing *Info. Scis. III,* 80 Fed. Cl. at 788).  Because the SSA violated the FAR in the "best value" decision, the Government's position cannot be said to be "substantially justified."  *Id.*

Third, responding to the Government's argument that Symplicity's proposal met the minimum solicitation requirements for system transition, DEVIS argued that the Government misread the court's decision.  *Id.* at 12.  Even if the SSA was correct in dismissing the "Minority" Technical Report's concerns as to Symplicity's staffing, the court found a number of inconsistencies in the technical evaluation that the Government has not explained and cannot explain.  *Id.* at 12-13 (citing *Info. Scis. III,* 80 Fed. Cl. at 789-90).

### c.    The Court's Resolution.

A "prevailing party," under the EAJA, may recover attorney fees, "unless the position of the [G]overnment was substantially justified."  *Bowey* v. *West*, 218 F.3d 1373, 1374 (Fed. Cir. 2000) (quoting 28 U.S.C. § 2412(d)).  Failure to prevail on the merits, however, does not automatically mean the Government's position was not substantially justified.  *See Scarborough*, 541 U.S. at 415 ("Congress did not . . . want the 'substantially justified' standard to be read to raise a presumption that the Government position was not substantially justified simply because it lost the case[.]") (citations omitted).  The United States Supreme Court has defined "substantially justified" to mean "justified in substance or in the main – that is, justified to a degree that could satisfy a reasonable person."  *Pierce*, 487 U.S. at 565 (holding that the Government's position must have a "reasonable basis in both law and fact.") (citations omitted);*see also  Smith* v. *Principi*, 343 F.3d 1358, 1362-63 (Fed. Cir. 2003) ("In conducting a 'totality of the circumstances' inquiry, a fact-finder will naturally and properly focus on those circumstances that are 'relevant,' and in particular on any circumstances that may be 'determinative.'") (citations omitted); *Massie* v. *United States*, 226 F.3d 1318, 1321 (Fed. Cir. 2000) ("As a waiver of sovereign immunity, the EAJA is interpreted narrowly.  But this is not a talisman for permitting the [G]overnment to avoid liability in all cases.").

The United States Supreme Court also has held that the Government has the burden to establish "that the position of the United States was substantially justified."  *Scarborough*, 541 U.S. at 414; *see also RAMCOR Servs. Group*, 185 F.3d at 1288 ("Once a prevailing party satisfies the EAJA requirements . . . the burden shifts to the Government to show that its litigating position was 'substantially justified.'").  The position of the United States is "the [G]overnment's position throughout the dispute, including not only its litigating position but also the agency's administrative position."  *Doty* v. *United States*, 71 F.3d 384, 386 (Fed. Cir. 1995) (internal citations omitted); *see also Chiu* v. *United States*, 948 F.2d 711, 715 (Fed. Cir. 1991) ("[T]rial courts are instructed to look at the *entirety* of the [G]overnment's conduct[.]") (emphasis added).  Accordingly, whether the Government's position is substantially justified "is for the [trial] court to [determine], and thus suggests some deference to [that] court upon appeal."  *Pierce*, 487 U.S. at 559.

Accordingly, the United States Court of Appeals for the Federal Circuit has held that "a bid award may be set aside if either (1) the procurement official's decision lacked a rational basis, *or* (2) the procurement procedure involved a violation of regulation or procedure."  *Galen Med. Assocs.*, 369 F.3d at 1329 (emphasis added).  Therefore, if the Government violates a regulation, that violation *ipso facto* is "unreasonable."  *See Clemmons* v. *West*, 206 F.3d 1401, 1403 (Fed. Cir. 2000)

(holding that the relevant agency was substantially justified in following the controlling law at the time of decision); *see also L.G. Lefler, Inc.* v. *United States*, 801 F.2d 387, 389 (Fed. Cir. 1986) ("[B]oth the VA and the Government's litigators in the Claims Court advanced in good faith a novel but credible position which deserved ventilation."). In this case, the Government's apportionment argument that all ISC's arguments and almost all of DEVIS' arguments were rejected is irrelevant, because the issue is whether the position of *the Government* was substantially justified. *See Loomis*, 74 Fed. Cl. at 354 (awarding EAJA fees despite the fact that "defendant prevailed on most of the issues plaintiff raised").

In this case, the Government was not "substantially justified" in defending errors that the court specifically identified in the underlying procurement process. For example, the SSA was not substantially justified in determining that ISC and Symplicity received "similar" technical adjectival ratings from the evaluators and then rating each proposal as "Acceptable" with "Confidence." *See Info. Scis. III*, 80 Fed. Cl. at 790-93. The evaluations of ISC and Symplicity were not "similar." Although the Minority and Mitretek Reports assigned the same technical adjectival ratings to the companies, the Majority Report concluded that ISC's proposal was "marginal," while Symplicity's proposal was "unacceptable." *Id*. at 791 ("The SSA's misperception of the technical ratings of ISC and Symplicity is even more apparent when the Majority Report's textual explanation is reviewed."). Even if the record supported the SSA's determination that the companies' adjectival ratings were "similar," the SSA "was not authorized to change the ratings of the Technical Team[.]" *Id*. at 790. The SSA's job was "to compare the *existing technical ratings of the technical professionals* with the price analysis and incentive plan analysis and conduct a 'best value' analysis." *Id*. (emphasis in original). Instead, the SSA exceeded the scope of his authority, in violation of FAR 15.308 and the Solicitation, by proclaiming both companies' technical ratings as "Acceptable" with 'Confidence," thereby rendering any subsequent technical comparison between them a wash. *See* 48 C.F.R. § 15.308 (The Source Selection Decision shall "be based on a *comparative assessment of the proposals* against all source selection criteria in the solicitation.") (emphasis added); AR 265 (RFP § M.8) ("Once the technical proposals have been evaluated and [the] consensus adjectival and confidence ratings are assigned, the *rated* technical proposals shall then be *compared* to the price analysis and incentive plan for each proposal, to complete a best value determination for the Government.") (emphasis added).

In addition, the Government was not "substantially justified" in arguing that the SSA's "best value" decision was proper. As the court concluded, the SSA "disregarded the Solicitation's directive to place significantly more weight on all technical evaluation factors than on price and 'incentive plan' and, instead, accorded equal or greater weight on price." *Info. Scis. III*, 80 Fed. Cl. at 791-92 (*comparing* AR 258 (RFP § M.2) with AR 2561-62 (Sept. 13, 2007 Source Selection Decision)). The SSA's "best value" decision, using phrases such as "price premium" to justify rejecting ISC and DEVIS from award, evidences that the SSA considered price and non-price factors equally, in direct violation of the Solicitation.[8]  *Id.* (citing AR 792); AR 258 (RFP § M.2) (All

---

[8] The Government also criticized the court for not stating "what cost difference *would have* been sufficient to allow the SSA to rationally select Symplicity's Acceptable proposal over DEVIS' Excellent proposal and ISC's Acceptable proposal[.]" *See* Gov't Resp. ISC at 17 (internal quotations omitted). The court, however, was not required to determine what cost difference was sufficient.

"technical evaluation proposals, when combined, are *significantly more important* than price and incentive plan [factors].") (emphasis added).  Moreover, the SSA disregarded the evaluators' concerns that Symplicity's proposal presented significant transition and staffing risks that could undermine performance, instead focusing on that proposal's lower price.[9]  *See Info. Scis. III*, 80 Fed. Cl. at 792.

Likewise, the Government was not "substantially justified" in arguing that Symplicity's proposal met the minimum solicitation requirements for system transition.  As the court determined, the underlying technical evaluations reported that Symplicity's proposal had substantial transition and staffing risks, so that the SSA could not have had a rational basis for concluding that the proposal met the Solicitation's minimum requirements.  *Id.* (citing RFP § C.3.3) ("The offeror shall provide a system . . . that . . . plan[s] for and accomplish[es] a seamless system transition from the current FBO system to the offeror's proposed FBO system[.]").  Although the Government is correct that the Minority Report suggested that Symplicity could locate additional transition staff to meet minimum transition performance requirements, the Minority Report agreed with the Majority Report that, with respect to the *proposal itself*, "staff resources explicitly assigned to activities associated with outreach and training appear inadequate for the level of activity proposed."  AR 971 (April 6, 2005 Minority Report Technical Report: Symplicity).  Accordingly, the SSA reasonably could not conclude that Symplicity's proposal met the minimum Solicitation requirements.  *See Dickinson* v. *Zurko*, 527 U.S. 150, 162 (1999) ("[T]he APA court/agency 'substantial evidence' standard [requires] a court to ask whether a 'reasonable mind might accept' a particular evidentiary record as 'adequate to support a conclusion.' . . . The APA requires meaningful review; and its enactment meant stricter judicial review of agency factfinding than Congress believed some courts had previously conducted.") (citations omitted).

Finally, the court rejects the Government's argument that the court was mistaken in characterizing identified errors as violations of FAR 15.101 and 15.308.  The SSA's "best value" decision violated both FAR 15.101 and 15.308, because the SSA did not assess the proposals against

---

The court's job was to determine whether the SSA exceeded the scope of discretion afforded by the FAR and Solicitation in conducting the "best value" analysis.  *See Banknote Corp*. v. *United States*, 365 F.3d 1345, 1355-56 (Fed. Cir. 2004) ("It is well-established that contracting officers have a great deal of discretion in making contract award decisions, particularly when . . . the contract is to . . . provide the agency with best value.  The issue here is whether the contracting officer *acted within the scope of that discretion*.") (emphasis added).

[9] The Government also contended that the court, in a prior protest challenging a procurement for the same FBO contract and involving the same offerors, "approved of similar language in the former SSA's best value decision[.]"  Gov't Resp. ISC at 18 (citing *Info. Scis. I*, 73 Fed. Cl. at 119).  But, in the prior protest, ISC and DEVIS challenged the *procedure* by which the SSA conducted the comparative assessment in the best value decision.  *Info. Scis. I*, 73 Fed. Cl. at 119.  In the current protest, the parties challenged the SSA's adherence to the *substantive* criteria of the Solicitation in issuing the Source Selection Decision, and the court concluded that the SSA did not adhere to that criteria.  *See Info. Scis. III*, 80 Fed. Cl. at 789.  Therefore, the court's Application of FAR 15.308 was not inconsistent.

the source selection criteria set forth in the Solicitation.[10]  *See* 48 C.F.R. §§ 15.308, 15.101 ("An agency can obtain best value in negotiated acquisitions by using any one or a combination of source selection approaches.  In different types of acquisitions, the *relative importance of cost or price may vary*. . . . The less definitive the requirement, the more development work required, or the *greater the performance risk, the more technical or past performance considerations* may play a dominant role in source selection.") (emphasis added).  Assuming *arguendo* that some of the errors identified by the court did not violate the FAR, nevertheless, these errors violated the terms of the Solicitation or were unsupported by the Administrative Record.  *See Info. Scis. III*, 80 Fed. Cl. at 791 ("[T]he new SSA disregarded the Solicitation's directive to place significantly more weight on all technical evaluation factors than on price and "incentive plan" and, instead, accorded *equal or greater weight* on price.") (emphasis in original).

For these reasons, the court has determined that the Government was not "substantially justified" in defending these collective errors.  *See Pierce*, 487 U.S. at 564 (holding that the Government's position should have "a reasonable basis both in law *and* fact") (emphasis added); *Chiu*, 948 F.2d at 715 (stating that the proper inquiry is "whether the government's *overall* position had a reasonable basis in both law and fact.") (emphasis added).

### 4.    Plaintiff And Plaintiff-Intervenor Are Entitled To Attorney Fees.

### a.    The Government's Argument.

Next the Government argued that many descriptions of the legal work submitted by ISC and DEVIS in their EAJA Applications, *e.g.*, three hours billed to "work on bid protest issues," are too vague for the court to ascertain if they correspond to successful claims.  *See* Gov't Resp. ISC at 26; Gov't Resp. DEVIS at 27.  Accordingly, applicants have failed to provide a record for the court to determine whether such fees are recoverable.  *See* Gov't Resp. DEVIS at 27.  The Government challenged both ISC and DEVIS claims for unsuccessful work, embedding the claims in "block billing,"*i.e.*, the practice of entering the total daily time spent working on a case, rather than an itemization of the time for each specific task.  *See* Gov't Resp. DEVIS at 23; Gov't Resp. ISC at 24.

In addition, the Government argued that ISC's and DEVIS' fees should be reduced, because they "are excessive," include non-recoverable "clerical work," are unrelated to the protest, were performed prior to the protest, are "duplicative," and/or relate to non-recoverable "supervision" of

---

[10] The Government also asserted that FAR 15.101 and 15.308 concern only *procedural* requirements.  *See* Gov't Resp. DEVIS at 18-19 ("FAR 15.101 gives an agency authority to conduct a best value procurement, but does not tell the agency how to weigh evaluation factors. . . . In this case, the SSA's decision assessed the proposals against all criteria [pursuant to FAR 15.308], but (in the court's view) did not weigh the criteria correctly.").  The court disagrees.  FAR 15.101 and 15.308 require that the SSA comply with the *substance* of the Solicitation's criteria in rendering the "comparative assessment" of the competing proposals.  *See* 48 C.F.R. § 15.101 ("In different types of acquisitions, the *relative importance of cost or price may vary*.") (emphasis added); 48 C.F.R. § 15.308 ("The source selection authority's (SSA) decision shall be based on a comparative assessment of proposals against all source selection criteria in the solicitation.").

junior attorneys. *See* Gov't Resp. ISC at 29-33; Gov't Resp. DEVIS at 32-40. Likewise, the Government argued that ISC and DEVIS improperly requested fees for work on arguments that were not dispositive of the protest. *See* Gov't Resp. ISC at 25-27; Gov't Resp. DEVIS at 26-31.

### b.       Plaintiff And Plaintiff-Intervenor's Responses.

ISC disputed that it submitted excessive, clerical, or duplicative claims, stating that "ISC efficiently and reasonably staffed and litigated the bid protest." Pl. Reply at 17.

DEVIS responded that no claims were made for "excessive hours," and DEVIS' legal work entailed "factually intensive arguments that required tracing numerous threads through eight volumes of administrative records." Int. Reply at 21. In addition, certain challenged fees were not excessive, because the court's rules require that an attorney perform the electronic filing. *Id.* Moreover, DEVIS achieved "excellent results" in the underlying protest by seeking and winning an injunction of the FBO contract award to Symplicity. *See* Int. Reply at 16 (citing *Info. Scis. III*, 80 Fed. Cl. at 800). Therefore, DEVIS should be fully compensated for all legal work claimed in the EAJA Application. *Id.* at 15 (citing *Hensley*, 461 U.S. at 435 ("Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. . . . Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.")).

### c.       The Court's Resolution.

An EAJA claimant is required to proffer "an itemized statement . . . [of] the actual time expended and the rate at which fees and other expenses were computed." 28 U.S.C. § 2412(d)(1)(B); *Loomis*, 74 Fed. Cl. at 356 ("[C]ontemporaneous records of the exact time spent by attorneys on a case, their status and usual billing rates, and a breakdown of expenses [are] essential to support a claim under the EAJA.") (internal quotation and citation omitted).

Both ISC and DEVIS have provided the court with "contemporaneous records of the exact time spent by attorneys on a case, their status and usual billing rates, and a breakdown of expenses." *See Loomis*, 74 Fed. Cl. at 356. Nevertheless, the Government objects both to legal entitlement and the adequacy of documentation regarding certain fees and expenses. *See* Gov't Resp. ISC at 25-27 (citing *Fair Housing Council* v. *Landow*, 999 F.2d 92, 97 (4th Cir. 1993) ("[T]he burden of showing which hours are recoverable for work on successful claims . . . rest[s] with the applicant.") (internal quotations and citation omitted)); Gov't Resp. DEVIS at 26-31 (citing same).

In *Hensley*, the United States Supreme Court held that:

The [trial] court . . . should exclude . . . hours that were not "reasonably expended." Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee

19

submission.  In the private sector, "billing judgment" is an important component in fee setting.  It is no less important here.  Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority.

461 U.S. at 434 (emphasis in original) (internal quotations and citations omitted); *Applegate* v. *United States*, 52 Fed. Cl. 751, 764 (2002) (the court should subtract "duplicative, unproductive, or excessive hours" from any attorney fee award).

**I.      Plaintiff's And Plaintiff-Intervenor's Attorney Fee Applications Were Documented, And Were Neither Excessive, Nor Duplicative.**

Neither ISC's nor DEVIS' invoices evidence "duplicative" or "excessive" work.  The underlying protest involved a complex procurement, evidenced by an eight-volume Administrative Record, that was litigated by four parties submitting multiple, and sometimes novel, legal claims. Therefore, contrary to the Government's assertions, billing two or three hours to review a Government motion, even if short in length and containing arguments submitted in earlier contexts, is not excessive in light of the complex factual and legal issues in this case.  *See, e.g.*, Int. Ex. C (Feb. 22, 2008 DEVIS Invoice) (billing 2.5 hours to review Government's Opposition to ISC and DEVIS' Joint Motion For Leave To Amend Complaint).  Likewise, billing six hours to prepare a Motion For Reconsideration Of Preliminary Injunction is not excessive, even if portions of that motion contained repetitive or quoted source material.  *See, e.g.*, Pl. Ex. C (Feb. 28, 2008 ISC Invoice) (billing 6 hours on Jan. 8, 2008 for work on "Second Motion For Injunction").  In addition, although more hours are claimed in DEVIS' EAJA Application than in ISC's, DEVIS' briefs were longer than ISC's, more factually-intensive, and, in the court's judgment, were more cogent and persuasive than any other party's briefs.  Moreover, the total EAJA fees claimed by DEVIS in this protest ($63,295.74) was lower than the total claimed in the previous FBO protest, which was similar in scope.  *See Info. Scis. II*, 78 Fed. Cl. at 685 (awarding DEVIS $67,445.43 in attorney fees).

The court also rejects the Government's contention that the filing of motions or the preparation of hearing documents are "clerical tasks."  First, the Rules of the United States Court of Federal Claims require that an attorney sign a pleading or motion with the court.  *See* RCFC 83.1 ("Only attorneys who are members of the bar of this court . . . may file pleadings[.]").  The guidelines for the court's Case Management & Electronic Filing System ("CMECF") also provide that *attorneys* are to upload filings.  *See* U.S. COURT OF FEDERAL CLAIMS: ELECTRONIC CASE FILING: USER MANUAL FOR ATTORNEYS 3-4, 8 (Nov. 4, 2004).  Accordingly, the electronic signing and filing of pleadings and motions are to be performed by attorneys.  Likewise, the preparation of documents for a hearing necessarily entails substantive review and organization of legal arguments that is not "easily performed" by a "lower paid employee."  *Id.*

Finally, the court rejects the Government's argument that certain fees claimed by DEVIS relate to the non-recoverable "supervision" of junior attorneys or staff.  Here, the Government conflates the term "supervision" with "training."  The non-precedential case cited by the Government holds only that time spent in *training* a junior attorney is not compensable under the EAJA.  *See Richards* v. *Sec'y Health & Human Servs.*, 884 F.Supp. 256, 261 (N.D. Ohio 1995).  The fees at issue, however, concern *supervision* of junior associate and/or staff's *work related to this protest* and

20

not general training or professional development. *See, e.g.*, Int. Ex. C (Dec. 21, 2007 DEVIS Invoice) (Mr. Ryland billing 4.5 hours on Nov. 9, 2007 for "supervis[ing] work on drafting motion and brief in support").

On the other hand, the court agrees with the Government that ISC's claim for fees related to a data transfer dispute with GSA should be excluded. That dispute involved a request for transfer of ISC's alleged "proprietary information" to Symplicity during the FBO system transition and was limited to discussions between ISC and GSA, not related to the "adversarial adjudication" before the court. *See* Pl. Ex. B (Feb. 28, 2008 and March 31, 2008 ISC Invoices) (billing attorney fees for discussion with GSA on ISC data transfer); *Levernier Constr., Inc.* v. *United States*, 947 F.2d 497, 503 (Fed. Cir. 1991) ("Because the EAJA as a waiver of sovereign immunity is to be strictly construed, 'civil action' should be given its . . . ordinary (and most restrictive) meaning to include only judicial proceedings."). Moreover, this dispute led to a motion for preliminary injunction that ultimately was denied as moot, because it did not "implicate" the merits of the bid protest itself. *See Lion Raisins*, 57 Fed. Cl. at 518 (A charge that "does not implicate plaintiff's bid protest action in this court" should be excluded).

For the same reasons, DEVIS' claim for fees incurred in preparing statements to the press should be excluded. *See* Int. EAJA App. Ex. C (Oct. 31, 2007 DEVIS Invoice) (billing time on Oct. 26, 2007 for preparation of statement in response to potential media inquiries). The United States Court of Appeals for the District of Columbia has held that "the government cannot be charged for time spent in discussions with the press." *Role Models America* v. *Brownlee*, 353 F.3d 962, 973 (D.C. Cir. 2004). Because DEVIS' relations with the media exceed the scope of work performed on the underlying protest, the court does not find these fees compensable under the EAJA.[11]

ISC's EAJA Application requested $20,858.34 in attorney fees, based on a $169.58 hourly rate. *See* Pl. EAJA App. ¶ 8. DEVIS' EAJA Application requested $66,341.73 in attorney fees, based on the same hourly rate. *See* Int. EAJA App. Ex. B; Int. Reply at 26. This hourly rate is based on an increase in the Department of Labor's consumer price index reflecting an adjustment from the 1996 statutorily authorized cap of $125 per hour. *See* 28 U.S.C. § 2412(d)(2)(A) ("[A]ttorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee."); *Cal. Marine Cleaning, Inc.* v. *United States*, 43 Fed. Cl. 724, 733 (1999) ("Cost of living adjustments are specifically contemplated in the EAJA."). The Government does not object to this adjusted rate. *See* Gov't Resp ISC; Gov't Resp. DEVIS.

For these reasons, the court has determined that the increase in the cost of living since 1996 justifies the higher fee claimed and that ISC and DEVIS have supplied sufficient verification to

---

[11] DEVIS also voluntarily excluded claims for fees incurred prior to October 29, 2007, the date DEVIS filed a Motion To Intervene. *See* Int. Reply at 26. The court agrees that this amount should be excluded. In addition, DEVIS voluntarily withdrew claims for the fees of two attorneys billing for the same "filing of papers," *i.e.*, DEVIS' October 29, 2007 Motion To Intervene. *See* Int. Reply at 26; Int. Ex. C (Oct. 31, 2007 DEVIS Invoice) (billing 1.5 hours for Mr. Ryland on October 25, 2007).

support this increase. *See* Pl. EAJA App. Ex. D; Int. EAJA App. Ex. D (computing the inflationary increase by: (1) determining the consumer price index in March 1996 to allow the $125-per-hour rate; and (2) accounting for the subsequent increase in the consumer price index by taking the average price index over the period of the underlying litigation).

> **ii.     Plaintiff's And Plaintiff-Intervenor's Attorney Fees Should Not Be Apportioned In This Case.**

ISC has submitted copies of billing statements for legal services rendered in the underlying litigation from October 1, 2007 through February 27, 2008. *See* Pl. EAJA App. Ex. B-D. These records itemize the billable hours and rates for each attorney working on the case and the services rendered for the billable hours performed. *Id.* DEVIS also submitted copies of billing statements for legal services rendered in the underlying litigation from October 1, 2007 through March 19, 2008. *See* Int. EAJA App. Ex. B-C. These records itemize the billable hours and rates for each attorney working on the case and the services rendered for the billable hours performed. *Id.* Nevertheless, the Government argues that these fees should be reduced, because awarding either party all requested fees would result in a "recovery out of proportion to [their] actual success." *See* Gov't Resp. ISC at 23 (quoting *CEMS, Inc* v. *United States*, 65 Fed. Cl. 473, 484 (2004)); Gov't Resp. DEVIS at 20 (quoting same).

In *Hubbard,* the United States Court of Appeals for the Federal Circuit stated that under the Civil Rights Act attorney fees provisions, the extent of a plaintiff success "is a crucial factor in determining the proper amount of an award of attorney fees under 42 U.S.C. § 1988 . . . where the plaintiff's achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." *Hubbard,* 480 F.3d at 1333 (internal quotations omitted). Our appellate court then extended this standard of evaluation to claims under the EAJA. *Id.* ("Although those cases involved the fee-shifting provision of the Civil Rights Act, we see no reason why the foregoing principles there announced should not be equally applicable to the parallel fee-shifting provision of the Equal Access to Justice Act.").

In the court's judgment, both ISC's and DEVIS' claims were successful. ISC prevailed in arguing that the SSA violated FAR 15.308, in issuing a Source Selection Decision that was inconsistent with the Solicitation's evaluation factors. *See Info. Scis. III*, 80 Fed. Cl. at 797. ISC also obtained the results it sought. *Compare* Second Am. Compl. ¶ 49 (requesting that the court enjoin "Defendant from performance under" the Solicitation and "from proceeding with the subject procurement until it properly evaluates ISC's and Symplicity's proposal consistent with the terms of the Solicitation and applicable procurement laws[.]"), *with Info. Scis. III*, 80 Fed. Cl. at 800 ("GSA's September 28, 2007 re-award of [the FBO Contract] is set aside . . . . GSA is ordered to issue a revised Solicitation, if it intends to proceed in this procurement[.]"). DEVIS also prevailed in arguing that "the SSA failed to apply the cost-technical trade-off criteria in his source selection decision." *Compare* Int. Mem. II ¶ 4, at 3 ("[T]he court should set aside [GSA's] unlawful and irrational procurement action[.]"), *with Info Scis. III*, 80 Fed. Cl. at 800 ("GSA's September 28, 2007 re-award of [the FBO Contract] is set aside . . . . GSA is ordered to issue a revised Solicitation, if it intends to proceed in this procurement[.]"). Although the court did not enjoin Symplicity from competing in any future FBO procurement, as requested, DEVIS still achieved the result it sought. In addition, neither ISC nor DEVIS took action that unnecessarily protracted the litigation. *See* 28

U.S.C. § 2412(d)(1)(C) (Plaintiff must not engage in conduct that "unduly and unreasonably protract[s] the final resolution of the matter in controversy.").

For these reasons, the court has determined that ISC and DEVIS achieved "excellent results" in the underlying litigation, and their attorneys should recover fully compensatory fees. *See Hensley*, 461 U.S. at 436-37 ([T]here is "no precise rule or formula for making these determinations . . . The court necessarily has discretion in making this equitable judgment."); *see also Loomis*, 74 Fed. Cl. at 359 ("We see no reason to reduce the fees merely because plaintiff did not prevail on all the issues he raised."). Because apportionment is not required, the fee award will not be reduced.

### 5. Plaintiff And Plaintiff-Intervenor Are Entitled To Paralegal Fees.

#### a. The Government's Argument.

In addition, Government questioned whether ISC's law firm employees were paralegals or support staff. *See* Gov't Resp. ISC at 33. In addition, ISC claimed paralegal rates that exceed the "prevailing market rates." *Id.* ( (citing *Richlin Sec. Serv. Co.* v. *Chertoff*, __ U.S. __, 128 S. Ct. 2007, 2019 (2008) (a "prevailing party that satisfies EAJA's other requirements may recover its paralegal fees from the Government *at prevailing market rates*") (emphasis added)). Moreover, the paralegal or support staff rates claimed by ISC exceed the EAJA capped rates for attorneys. *Id.* at 34. Finally, the Government argued that certain paralegal or support staff work claimed by ISC, such as the filing of motions, retrieving case law, and copying and organizing briefs, is "clerical" in nature. *Id.* at 35 (citing *Role Models*, 353 F.3d at 973). The Government made the same arguments regarding DEVIS' paralegal fees. *See* Gov't Resp. DEVIS at 44-47.

#### b. Plaintiff's And Plaintiff-Intervenor's Responses.

NEW PARALEGAL COMPENSATION is a survey of market rates for paralegal services. *See* Int. Reply Ex. A (Altman Weil, Inc., "NEW PARALEGAL COMPENSATION," http://www.altmanweil.com/index.cfm/fa/r.resource_detail/oid/52e8eda3-156b-4f36-b711-56c2ff dc0430/resource/New_Paralegal_Compensation_Survey_Released.cfm (last visited March 30, 2009) (hereinafter "the WEIL REPORT") (reporting that in 2006 "median billing rates rang[ed] from $95/hour for Paralegal Clerks to $150/hour for Paralegals and topped out at $210/hour for Paralegal Case Managers.").

To conform to the WEIL REPORT, ISC decided to reduce the paralegal rates claimed to the market rate. *See* Pl. Reply at 18. In addition, ISC agreed to withdraw the fees that did not involve paralegals.[12] *Id.* DEVIS also agreed to reduce paralegal rates. *See* Int. Reply at 26 (originally claiming: $210 rate for senior paralegal Kathleen M. March; $150 rate for paralegal Jonis C. Belu-John; and $95 rate for junior paralegal clerk Emily J. Moore).

---

[12] ISC also withdrew its claims for 0.5 hours charged by S. Devonish-Prince and 4.0 hours charged by P. Geiger. *See* Pl. Reply at 18-19.

### c.      The Court's Resolution.

The United States Supreme Court recently held that a "prevailing party that satisfies EAJA's other requirements may recover . . . paralegal fees from the Government at prevailing market rates." *See Richlin*, 128 S. Ct. at 2019.  The Court, however, did not provide trial courts with guidance in how to determine "the prevailing market rate."  *Id.*

Both ISC and DEVIS agree that the WEIL REPORT should be used to set the market rate for paralegal rates.  *See* Pl. Reply at 18; Int. Reply at 25-26.  According to the WEIL REPORT, the billing rate for a Paralegal Clerk ranges from $95 per hour to $210 per hour for a Paralegal Case Manager. *See* Int. Reply Ex. A.  Both ISC and DEVIS request paralegal fees at the maximum rate.  *See* Pl. Reply at 18; Int. Reply at 25.  If the court were to grant ISC and DEVIS' request for paralegal fees at this rate, however, an anomalous result would occur: they would be entitled to recover paralegal fees at rates that exceed the $125 per hour cap on attorney fees in the EAJA, as adjusted for inflation. *See* 28 U.S.C. § 2412(d)(1)(A).  Neither ISC nor DEVIS cite any case law to support the proposition that the market rate for paralegal services may exceed the statuary cap for attorney fees.  The United States Court of Federal Claims, however, has declined to award paralegal fees in excess of $125 per hour.  *See Precision Pine & Timber, Inc.* v. *United States,* 83 Fed. Cl. 544, 553 (2008) (granting paralegal and law clerk fees requested "at rates well below the EAJA cap"); *JGB Enter., Inc.* v. *United States*, 83 Fed. Cl. 20, 31 n.11 (2008) (setting the rate between $50 and $100 per hour for work done by law clerks).   In addition to the WEIL REPORT, DEVIS cited the National Associations of Legal Assistants' 2008 National Utilization and Compensation Survey Report ("NALA REPORT"), that surveys paralegal billing rates nationally.  *See* Int. Reply Ex. B.[13]  In the NALA REPORT, the regional average in this area for paralegal billing rate is $102 per hour and below the EAJA cap.  *Id.* at 5.  For these reasons, the court is satisfied that $102 is a more appropriate market rate for paralegal services under the EAJA.

The court, however, rejects the Government's position that certain paralegal time entries claimed by ISC and DEVIS are not recoverable, because they are "clerical" in nature, *e.g.*, filing of motions, retrieval of case law, organizing briefs, proofing briefs, and organizing case documents.  The court considers these to be required legal duties.  The fact that they were delegated to trained and supervised employees does not render them unrecoverable.  *See* National Association Of Legal Assistants, "What Is A Paralegal: ABA Definition," http://www.nala.org/whatis.htm  (last visited March 30, 2009) ("A legal assistant or paralegal is a person qualified by education, training or work experience who is employed or retained by a lawyer, law office, corporation, governmental agency or other entity who performs specifically delegated substantive legal work for which a lawyer is responsible.").

---

[13] The NALA REPORT is based on an internet poll conducted between October 15, 2007 and February 15, 2008, resulting in 1,424 responses from forty-eight states, the District of Colombia, and United States Virgin Islands.  *See* http://www.nala.org/survey_table.htm (last visited March 30, 2009).

6.      **Plaintiff And Plaintiff-Intervenor Are Entitled To Miscellaneous Expenses.**

a.      **The Government's Argument**.

Both ISC and DEVIS claimed expenses for computer database research, *i.e.* WESTLAW or LEXIS.  *See* Pl. EAJA App. Ex. C; Int. EAJA App. Ex. C.  The Government contended that such research is recoverable only at the cost to the firm and asserts that large law firms typically have blanket fee arrangements with such providers, making these research fees part of firm overhead and not recoverable under the EAJA.  *See* Gov't Resp. ISC at 37; Gov't Resp. DEVIS at 49.  In addition, claims for copying should be reduced or deemed unnecessary.  *See* Gov't Resp. ISC at 37; Gov't Resp. DEVIS at 49.  The Government provided both parties with hard copies of the Administrative Record and all filings were electronic, "making these excessive copying costs unnecessary."  Gov't Resp. ISC at 37; Gov't Resp. DEVIS at 49.

b.      **Plaintiff's And Plaintiff-Intervenor's Responses.**

ISC initially requested $3,184.42 in miscellaneous expenses for telephone calls, facsimile, copying, employee overtime, couriers, cab fare, filling fees, CD media duplication, WESTLAW, PACER, and conference call transcripts.  *See* Pl. EAJA App. Ex. C.  Subsequently, ISC withdrew claims for reimbursement of $197.55 in employee overtime, reducing the requested total to $2,986.87.  *See* Pl. Reply at 19.  ISC, however, stated that it did not record excessive copy charges, because the hard copy of the Administrative Record that the Government provided related to previous litigation, making a new Administrative Record print-out necessary.  *See* Pl. Reply at 19.  Moreover, ISC's WESTLAW research was necessary.  *Id.*

DEVIS also requested $3,429.04 in miscellaneous expenses for binding, tabs, computer database research, copying, postage, scanning, meals, employee overtime, overtime transportation binding, transcripts, and a courier.  *See* Int. EAJA App. Ex. C.  Subsequently, DEVIS withdrew claims for reimbursement of $405.62 in employee overtime, meals, and transportation, bringing the requested expense amount to $3,023.42.  *See* Int. Reply at 26; Int. Reply Ex. C.

c.      **The Court's Resolution.**

The EAJA provides several examples of expenses that may be recovered.  *See* 28 U.S.C § 2412(d)(2)(A).[14]  This list, however, is not exhaustive.  *See Oliveira* v. *United States*, 827 F.2d 735,

_____

[14] Section 2412(d)(2)(A) of the EAJA provides:

"[F]ees and other expenses" includes the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case, and reasonable attorney fees (The amount of fees awarded under this subsection shall be based upon prevailing market rates for the kind and quality of the services furnished, except that (i) no expert witness shall be compensated at a rate in excess of the highest

744 (Fed. Cir. 1987) (authorizing the trial court to award "those reasonable and necessary expenses of an attorney incurred or paid in preparation for trial of the specific case before the court, which expenses are those customarily charged to the client where the case is tried.")  The "quantum and method of proof of each allowable expense" is left to the discretion of the trial court. *Id.*

As an initial matter, the court declines to reduce either party's requested copying expenses. *See* Pl. EAJA App. Ex. C; Int. EAJA App. Ex. C.  The Government has offered no evidence as to why these expenses were unnecessary, and copy charges are the sort of expenses for which the court has allowed compensation in the past.  *See Info. Scis. II*, 78 Fed. Cl. at 684.

In addition, ISC submitted adequate documentation for each miscellaneous expense incurred. *See* Pl. EAJA App. Ex. C (K&L Gates periodic invoice itemizing all miscellaneous expenses); *Info. Scis. II*, 78 Fed.Cl. at 684 (finding similar documentation sufficient to justify the cost of miscellaneous expenses).  ISC also has provided documentation indicating that all expenses were charged at a cost-based rate.  *See* Pl. Mot. Supp. Ex. B at 1 (K&L Gates Schedule of Standard).

DEVIS also documented each miscellaneous expense incurred. *See* Int. EAJA App. Ex. C (Kirkland & Ellis periodic invoice itemizing all miscellaneous expenses); *Info. Scis. II*, 78 Fed. Cl. at 684 (finding similar documentation sufficient to prove the cost of miscellaneous expenses). DEVIS also has provided documentation indicating that all expenses are charged at cost to the firm. *See* Kirkland & Ellis Client-Reimbursable Expenses And Other Charges (provided via e-mail to parties and the court).

Accordingly, the court is satisfied that both ISC's and DEVIS' claimed expenses are of the sort "customarily charged to the client."  *See Oliveira*, 827 F.2d at 744.

F.      **The Total Amount Awarded.**

The total amount awarded to ISC is set forth in the following table.

| | Hours | Capped Rate | Claim | Award | Difference Between Claim and Award |
|---|---|---|---|---|---|
| **Attorneys** | | | | | |
| Shook | 75.5 | $ 169.58 | $ 13,057.66 | $ 12,803.29 | $ 254.37 |
| Vogel | 46.0 | $ 169.58 | $ 7,800.68 | $ 7,800.68 | $ 0.00 |

---

rate of compensation for expert witnesses paid by the United States; and (ii) attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.)

28 U.S.C. 2412(d)(2)(A).

| | | | | | |
|---|---|---|---|---|---|
| **Total** | | | | $ 20,603.97 | |
| | | | | | |
| **Paralegals** | | | | | |
| Cotner | 5.5 | $ 102.00 | $ 1,100.00 | $ 561.00 | $ 539.00 |
| Litwin | 9.3 | $ 102.00 | $ 1,665.00 | $ 948.60 | $ 716.40 |
| **Total** | | | | $ 1,509.60 | |
| | | | | | |
| **Expenses** | | | | | |
| 12/26/2007 | | | $ 1,984.13 | $ 1,958.83 | $ 25.30 |
| 2/28/2008 | | | $ 668.91 | $ 668.91 | |
| 3/31/2008 | | | $ 333.78 | $ 333.78 | |
| **Total Awarded** | | | | $ 25,075.09 | |

The total amount awarded to DEVIS is set forth in the following table.

| | Hours | Capped Rate | Claim | Award | Difference Between Claim and Award |
|---|---|---|---|---|---|
| **Attorneys** | | | | | |
| Ryland | 125.50 | $ 169.58 | $ 21,282.29 | $ 21,282.29 | $ 0.00 |
| Meyers | 236.00 | $ 169.58 | $ 40,020.88 | $ 40,020.88 | $ 0.00 |
| **Total** | | | | $ 61,303.17 | |
| | | | | | |
| **Paralegals** | | | | | |
| March | 13.50 | $ 102.00 | $ 2,835.00 | $ 1,377.00 | $ 1,458.00 |
| Belu-John | 5.50 | $ 102.00 | $ 825.00 | $ 561.00 | $ 264.00 |
| Moore | 8.75 | $ 102.00 | $ 973.75 | $ 892.50 | $ 81.25 |
| **Total** | | | | $ 2,830.50 | |
| | | | | | |
| **Expenses** | | | | | |
| 11/20/2007 | | | $ 301.79 | $ 301.79 | $ 0.00 |
| 12/21/2007 | | | $ 460.62 | $ 460.62 | $ 0.00 |
| 1/22/2008 | | | $ 1,761.60 | $ 1,761.50 | $ 0.10 |
| 2/22/2008 | | | $ 244.27 | $ 244.27 | $ 0.00 |
| 3/14/2008 | | | $ 103.61 | $ 100.19 | $ 3.42 |
| 4/25/2008 | | | $ 111.50 | $ 111.50 | $ 0.00 |

| Total | | | | $ 2,979.87 | |
|---|---|---|---|---|---|
| | | | | | |
| Total Awarded | | | | $ 67,113.54 | |

## III.    CONCLUSION.

For the reasons stated herein, ISC's June 18, 2008 Application For Fees, pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412, is granted, in part, and denied, in part.  The Clerk of the United States Court of Federal Claims is directed to enter judgment in favor of Plaintiff in the amount of $25,075.09.

For the reasons stated herein, DEVIS' June 17, 2008 Application For Fees, pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412, is granted, in part, and denied, in part.  The Clerk of the United States Court of Federal Claims is directed to enter judgment in favor of Plaintiff-Intervenor in the amount of $67,113.54.

**IT IS SO ORDERED.**

s/ Susan G. Braden
**SUSAN G. BRADEN**
**Judge**